UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT
-------------------------------------------------------------X
KIM HANNAH,                                             :
THOMAS IRVING,                                          :
MICHAEL BARNHAM                                         :        12 CIV _____
                                                        :
        Plaintiffs,                                   :
-against                                                :
                                                        :
WAL-MART                                                :
        Defendant.                                    :
-------------------------------------------------------------X

## COMPLAINT

(JURY TRIAL DEMANDED)

Plaintiffs Kim Hannah, Michael Barnham and Thomas Irving (hereafter, "plaintiffs"), by their attorney, Kristan Peters-Hamlin, complaining of Wal-Mart, allege as follows:

**Nature of the Action**

1. This is an action for race discrimination, retaliation, and wrongful discharge.

2. The three plaintiffs were managers at Wal-Mart in Connecticut, two of whom were Human Resources managers.  Although Wal-Mart is a multi-billion dollar enterprise that has done well—and even better -- in the economic down-turn, it claimed that it had to restructure jobs in Connecticut and terminate certain management level employees for reasons that had no relationship to the performance of those employees.  Even though Wal-Mart benefits tremendously from the patronage of African American consumers, Wal-Mart disproportionately targeted for termination their African American managers in Connecticut.  Although Wal-Mart claimed that they were restructuring and eliminating jobs, what in fact occurred was that the white employees

were re-shuffled and they were installed in other jobs, but the African American employees were simply terminated outright.

3. Indeed, as time went on, it became increasingly apparent that the alleged "restructure" was simply a subterfuge.  Some of the alleged "eliminated" jobs reappeared, but were filled by others, who were white. After the African American managers were ushered out of the company, similar jobs soon re-opened, but these three plaintiffs, who were African American managers, were not allowed to interview for those positions.  Within months, it became clear that the alleged job eliminations were merely a pretext for Wal-Mart to rid itself of African American managers, particularly those who truthfully reported discrimination.

4. In their position as Human Resource managers, Hannah and Irving sometimes had to review allegations of discrimination and violations of employment laws and make recommendations.  Both Hannah and Irving reported violations of the law, and supported claims of employment law violations made by Wal-Mart employees and applicants for jobs.  Thereafter, Hannah and Irving were targeted for job eliminations.

5. Plaintiff Kim Hannah  ("Hannah"), is an African American professional formerly employed as a Market Human Resources Manager for Wal-Mart in Bristol, Connecticut.  She began working at Wal-Mart on June 25, 2002.  She always performed capably and professionally and received good reviews. On April 9, 2010, she was terminated from Wal-Mart on pretextual grounds, pursuant to an alleged regional lay off.  Wal-Mart advised Hannah, and made region-wide announcements stating, that none of the people selected for termination were terminated based on performance factors, but solely based on reorganization considerations.  Hannah later learned that

the alleged "reorganization" was a pretext, and that the vast majority of the people reorganized out of Wal-Mart in Connecticut were African American.

6. Hannah's job sometimes required her to provide her analysis as to whether Wal-Mart employees had been treated discriminatorily.  Because Hannah was African American and because she provided information that there was real evidence of discrimination in some of the cases she reviewed in her capacity as a Human Resources Manager, she was targeted for termination in retaliation for having provided her honest analysis of the facts—which was that discrimination existed at Wal-Mart.  After, she was terminated, she reapplied for multiple job openings for which she was qualified, but was not hired because of discrimination and retaliatory animus against her for having filed a complaint against Wal-Mart.

7. Plaintiff Thomas Irving ("Irving") is an African American professional formerly employed as a Market Human Resources Manager for Wal-Mart in New Haven, Connecticut.  He began working at Wal-Mart on April 15, 2006.  He always performed capably and professionally and received good reviews. On April 9, 2010, he was terminated from Wal-Mart on pretextual grounds, pursuant to an alleged regional lay off.  Wal-Mart advised Irving, and made region-wide announcements stating, that none of the people selected for termination were terminated based on performance factors, but solely based on reorganization considerations.  Irving later learned that the alleged "reorganization" was a pretext, and that the vast majority of the market-level managers "reorganized" out of Wal-Mart in Connecticut were African American.  The African American managers that Wal-Mart terminated were replaced by less qualified white or non-African American individuals.  Moreover, it soon became apparent that many of

the African American managers' jobs that were allegedly eliminated were only eliminated for those African American employees, and thereafter reappeared in a slightly different form.  However, the African American managers who were eliminated from those positions were blocked from reapplying because they were never afforded an interview, or were told as soon as they applied that the positions was closed, when in fact it was still open.  Additionally, because Irving had questioned certain illegal practices of management at Wal-Mart, he was targeted for termination.

8. Plaintiff Michael Barnham ("Barnham")  is an African American male formerly employed as a Market Asset Protection Manager for Wal-Mart in Waterford, Connecticut.  He began working at Wal-Mart on October 21, 2000.  He was always rated a high performing manager and received excellent reviews. On April 9, 2010, he was terminated from Wal-Mart on pretextual grounds, pursuant to an alleged regional lay off.  Wal-Mart advised Barnham, and made region-wide announcements stating, that none of the people selected for termination were terminated based on performance factors, but solely based on reorganization considerations.  Barnham later learned that the alleged "reorganization" was a pretext, and that the vast majority of the people "reorganized" out of Wal-Mart in Connecticut were African American.

9. These three African American managers terminated by Wal-Mart were replaced by less qualified individuals.  Moreover, it soon became apparent that many of the African American managers' jobs that were allegedly eliminated were only eliminated for those African American employees.  The positions were open for applications from less qualified white employees.  Shortly after Wal-Mart got rid of its African American managers in Connecticut, it advertised that several of those jobs were open for 'other'

applicants. However, when these three African American plaintiffs reapplied for their former jobs or for similar jobs for which they were qualified, they were not hired, even though Wal-Mart indisputably acknowledged that they were qualified for their former jobs.

10. Moreover, Barnham noticed that his former job was re-posted shortly after he was terminated, and he reapplied for that job. However, a less qualified white employee was selected, instead. After that less qualified white employee was terminated for misconduct, Barnham applied for his former job again and was rejected. He continued to reapply for jobs at Wal-Mart in other locations where open positions were posted, but was locked out of comparably paying jobs at Wal-Mart.

### The Parties, Venue and Jurisdiction

11. Plaintiff Hannah is an African American professional who formerly worked for Wal-Mart in Bristol, Connecticut. She resided in Connecticut at the time of her termination from Wal-Mart. She presently lives at 152 3rd Ave. Apt 1, Rensselaer, New York 12144.

12. Plaintiff Irving is an African American professional formerly employed at Wal-Mart in New Haven, Connecticut. He resided in Connecticut at the time of his termination from Wal-Mart. He presently resides at 247 Royal Palm Dr., Kissimmee, FL 34743.

13. Plaintiff Barnham is an African American professional formerly employed at Wal-Mart in Waterford, Connecticut. He resided in Connecticut at the time of his termination from Wal-Mart. He presently resides at 12 Circle Drive, Apt. B, Rensselaer, NY, 12144.

14. Defendant Wal-Mart is incorporated in Delaware and has its principle place of business in Arkansas.

15. Jurisdiction is appropriate in this Court under 28 U.S.C. §1332(a)(1), because the plaintiffs and defendants are citizens of different states and the amount in controversy exceeds $75,000.

16. This Court has subject matter jurisdiction under 42 U.S.C. §2000e *et seq* ("Title VII") and has pendent jurisdiction over the state law claims.

17. As the district of Connecticut is the district where the majority of the events giving rise to these claims occurred, venue is proper within this District pursuant to 28 U.S.C. §1391(a)(2).

18. Plaintiffs have exhausted all administrative remedies and have been given Right to Sue letters by both the EEOC and the CHRO.  The EEOC's notice was served upon plaintiff's counsel within the last ninety days and this Complaint is timely.

19. This Court has subject matter jurisdiction over these claims pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq. ("Title VII").

20. This Court also has pendent jurisdiction over the state claims.

## FACTUAL ALLEGATIONS

21. The African American managers that Wal-Mart terminated were replaced by less qualified individuals.

22. Moreover, it soon became apparent that many of the African American managers' jobs that were allegedly eliminated were only eliminated for those African American employees.

23. Shortly after Wal-Mart got rid of its African American managers in Connecticut, it advertised that those jobs were open for other applicants.  However, when these African American employees reapplied for their former jobs, they were not hired, even though Wal-Mart indisputably acknowledged that they were qualified for their former jobs. Moreover, there were dozens of new job postings around the country for positions similar to Hannah's and Irving's, but every time they applied, the proverbial 'door was slammed in their faces.'  Wal-Mart refused to consider rehiring Hannah or Irving after it learned they brought claims of discrimination against it.

**BARNHAM**

24. Barnham worked in "market team" or district 346.

25. In 2007, he received a "meet expectations" ranking.

26. In 2007, he filled in for and performed the regional director's job.

27. In 2007, he won the Best Market Asset Protection Manager ("MAPM") for the region and for his division, which is one-quarter of the country.

28. In 2008, he had the best reduction of company loss (ie:, "shrink" numbers) of the entire region—which includes 22 markets.

29. In 2009, he had the second best shrink numbers of the entire region.

30. He was the highest paid MAPM in Connecticut.

31. In 2010, Walmart stated that it would be reorganizing, but that none of the job eliminations would be based on performance.

32. It sent out a memorandum that said that the job elimination decisions were <u>not</u> going to be based on performance, but would be based on geographical considerations.

33. Barnham was specifically told that the decision to eliminate his job was *not* based on his performance.

34. Even though Wal-Mart pretended that they were eliminating his job, Barnham's job actually was not eliminated.  It was posted and filled by a white male who had no previous asset protection experience.  The less experienced white male was transferred in from Massachusetts and therefore, not only did not know the job, but also did not know the region.

35. Both of the open MAPM positions have been posted and filled and Barnham was never allowed to interview for those jobs.  On April 21, 2010, Barnham received a rejection letter for the position, which was filled on April 7, 2010 by a less qualified non-African American applicant.

36. Prior to Barnham's dismissal, there had been four African American market level positions out of twenty-two in Connecticut.  Thereafter, there remained only one market level position out of the ten remaining positions filled by an African American.  Thus, the percentage of African Americans at the market level went from 18% to ten percent after the reorganization.

37. Three fourths (75%) of the African American market level managers in Connecticut lost their jobs—all for not-for-cause-reasons.  In contrast, of the eighteen whites who were in market level positions, some of those white employees who were subjected to the reorganization were rehired and two who were terminated. However, the two who were terminated, Tom Burns and Brian West, were actually for-cause terminations.  Thus, there were only two of the eighteen whites (eleven percent) who were terminated

for not-for-cause reasons compared to the 75% of African Americans who were terminated for not-for-cause reasons.

38. Of the ten market merchandizers reorganized, all ten were allowed to look for other positions and most received other positions within the company.

39. On team 346, where Mike Barnham was employed, of the three market merchandizers, two were white and one was Hispanic.  The two white women got other positions and one was actually promoted.  The Hispanic employee was promoted to a store manager.

40. In total, of the twenty-two people at the market level in the Connecticut market, with respect to the ten market merchandizers, only two actually lost their jobs.

41. Before the restructuring, there were three market managers who were white.  After the restructuring, there are still three white market managers.  Only the names changed.  One market manager was terminated for performance reasons.  Another market manager asked to leave, and he was replaced by another white female from Long Island.

42. Of the three market health managers in CT, before the restructuring two were white female and one was a white male.  One white female lost her job for performance reasons before the restructuring.  She was replaced with a white female.  All the Market Health managers in the region remained with Wal-Mart after the "restructuring."

43. Of the three Asset Protection managers in CT before the restructuring, one was an African American male, one was a white female, and one was a white male.  Only the African American male was terminated for nonperformance reasons (Mike Barnham).  The white male, Tom Burns, was the subject of a fraud investigation and was targeted for termination before the restructuring.

44. Burns's job was re-posted two days after his job elimination was announced, and Barnham applied for it, but was never interviewed. Barnham had supervised ten people who worked at the "Coordinators" level. One of them at that lower coordinator level got Burns's job instead of Barnham. The only job Barnham was ever offered paid 33% less than the job from which Barnham was terminated. Barnham made $90,000 (with bonus) in 2009, and the job Wal-Mart offered was a demotion and paid only $60,000.

45. Shortly after Wal-mart informed Barnham his MAPM position was being eliminated and he could apply for another MAPM position, another MAPM position was posted in Bristol CT and he applied for it. However, he was not interviewed and therefore he was blocked from the job. Upon information and belief, a less qualified non-African American employee was hired instead.

46. Moreover, a second MAPM position for which he was qualified was posted in Mohegan Lake, NY on February 9, 2010, and he applied for it and was not interviewed. Upon information and belief, a less qualified non-African American employee was hired instead. He applied for a third posted position for which he was qualified on March 5, 2010, in Waterford CT and was not interviewed for that position either. A less qualified white male, Stan Golembeski, was hired for the MAPM job in Waterford, instead.

**TOM IRVING**

47. Shortly after Wal-Mart got rid of its African American managers in Connecticut, it advertised that several of those jobs were open for 'other' applicants. However, when these African American employees reapplied for their former jobs or for similar jobs for which they were qualified, they were not hired, even though Wal-Mart indisputably acknowledged that they were qualified for their former jobs. Moreover, Irving applied

for several other comparable jobs at Wal-Mart in other locations where open positions were posted, but every time he applied, he was shut down because Wal-Mart refused to consider rehiring Irving after it learned he brought a claim of discrimination against it.

48. Irving was targeted for termination in retaliation for his attempts to investigate violations of the law with respect to Lance Sovine's refusal to allow his employees to take their lunch, as required by Connecticut and federal law, public policy and Wal-Mart's policies.  He was also targeted for investigating the Assistant Managers' discrimination complaints against Manager Lance Sovine.  He was specifically told by Brian West not to investigate these violations of the law and these violations of Wal-Mart's policies.

49. Throughout his career at Wal-Mart, he witnessed and reported inconsistent treatment of African Americans and whites at Wal-Mart.

50. Since his employment was targeted for elimination, there have been job openings at Wal-Mart -- for instance in Florida for HR positions -- but Wal-Mart has not hired him for them or invited him to interview for those jobs or any others, despite the fact that he is qualified for those Florida jobs.  Upon information and belief, less qualified non-African American employees were hired for those positions.

51. Mr. Irving has repeatedly applied for jobs that were posted as open at Wal-Mart after he was terminated, but his applications have been blocked and he has not been interviewed for those jobs for which he was qualified, in retaliation for his complaint of employment discrimination that he filed at the Connecticut Human Rights Organization and at the Equal Employment Opportunity Commission.

52. Wal-Mart's claim that it made decisions regarding job eliminations based on "geographical" considerations is pretextual.  If geography were the basis for the decision, than Lauri Canales and market manager Alan Nassan would have also lost their jobs.

53. Irving was never coached at Wal-Mart for job performance problems.  He was always told he did his job well and that he was not terminated for performance reasons.

### KIM HANNAH

54. Hannah was targeted for termination because of discrimination and also in retaliation for her support of others with respect to their discrimination complaints.

55. For example, in 2006, Hannah complained about inconsistent promotions and interviewing practices based on race.

56. Additionally, Wal-Mart's outside counsel, Michael Hannan of Fox Rothschild told her that one of the reasons Wal-Mart settled the John Leslie race discrimination case was because of her testimony indicting the discriminatory practices of Wal-Mart.  Wal-Mart was not happy that Hannah gave truthful testimony about the discriminatory practices at Wal-Mart, and decided to get rid of her.

57. Since Hannah's job was targeted for elimination, she has applied for multiple jobs within Wal-Mart that were open and for which she was qualified.  She has either not been permitted to interview for those jobs or has not been called back for an interview.  The circumstances have indicated that Wal-Mart is retaliating against her for bringing a complaint. Upon information and belief, less qualified non-African Americans were hired instead.

## FIRST CLAIM FOR RELIEF
### RACE DISCRIMINATION IN TERMINATIONS
in violation of the CT FAIR EMPLOYMENT PRACTICES ACT
(on behalf of all three plaintiffs)

58. Plaintiffs repeat the allegations in paragraph 1 through 57, as though fully set forth herein.

59. By acts and practices described above, defendant discriminated against plaintiffs in the terms and conditions of their employment and in illegally terminating them, in violation of the Connecticut Fair Employment Practices Act.

60. Defendant is liable as plaintiffs' employer pursuant to the Connecticut Fair Employment Practices Act.

61. Plaintiffs are now suffering and will continue to suffer irreparable injury and monetary damages and damages for mental anguish and humiliation as a result of defendant's discriminatory acts.

## SECOND CLAIM FOR RELIEF
### RETALIATION IN TERMINATIONS
in violation of the CT FAIR EMPLOYMENT PRACTICES ACT
(on behalf of Irving and Hannah)

62. Plaintiffs repeat the allegations in paragraph 1 through 57, as though fully set forth herein.

63. By acts and practices described above, defendant retaliated against plaintiffs Hannah and Irving by illegally terminating them because of the above-described protected activity in which they engaged, including but not limited to opposing unlawful employment practices, in violation of the Connecticut Fair Employment Practices Act.

64. Defendant is liable as plaintiffs' employer pursuant to the Connecticut Fair Employment Practices Act.

65. Plaintiffs are now suffering and will continue to suffer irreparable injury and monetary damages and damages for mental anguish and humiliation as a result of defendant's discriminatory acts.

### THIRD CLAIM FOR RELIEF
### (RACE DICRIMINATION IN REFUSAL TO HIRE)
in violation of the CT FAIR EMPLOYMENT PRACTICES ACT
(on behalf of all three plaintiffs)

66. Plaintiffs repeat the allegations in paragraph 1 through 57, as though fully set forth herein.

67. By acts and practices described above, defendant discriminated against plaintiffs in refusing to re-hire them in positions to which they applied, and for which they were qualified, and instead hired less qualified non-African American employees for those positions, in violation of the Connecticut Fair Employment Practices Act.

68. Defendant is liable as an employer pursuant to the Connecticut Fair Employment Practices Act.

69. Plaintiffs are now suffering and will continue to suffer irreparable injury and monetary damages and damages for mental anguish and humiliation as a result of defendant's discriminatory acts.

70. Peters is entitled to such compensatory damages as are to be established at trial.

### FOURTH CLAIM FOR RELIEF
### (RETALIATION IN REFUSAL TO HIRE)
in violation of the CT FAIR EMPLOYMENT PRACTICES ACT
(on behalf of all three plaintiffs)

71. Plaintiffs repeat the allegations in paragraph 1 through 57, as though fully set forth herein.

72. By acts and practices described above, defendant retaliated against all three plaintiffs by illegally refusing to re-hire them into positions for which they were qualified because they engaged in the above-described protected activity, which included, but was not limited to, opposing unlawful employment practices, in violation of the Connecticut Fair Employment Practices Act.

73. Defendant is liable as an' employer pursuant to the Connecticut Fair Employment Practices Act.

74. Plaintiffs are now suffering and will continue to suffer irreparable injury and monetary damages and damages for mental anguish and humiliation as a result of defendant's discriminatory acts.

**FIFTH CLAIM FOR RELIEF**
**RACE DISCRIMINATION IN TERMINATIONS**
in violation of the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.*
(on behalf of all three plaintiffs)

75. Plaintiffs repeat the allegations in paragraph 1 through 57, as though fully set forth herein.

76. By acts and practices described above, defendant discriminated against plaintiffs in the terms and conditions of their employment and in illegally terminating them, in violation of the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.*

77. Defendant is liable as plaintiffs' employer pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.*

78. Plaintiffs are now suffering and will continue to suffer irreparable injury and monetary damages and damages for mental anguish and humiliation as a result of defendant's discriminatory acts.

## SIXTH CLAIM FOR RELIEF
## RACE DISCRIMINATION IN REFUSAL TO HIRE
in violation of the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.*
(on behalf of all three plaintiffs)

79. Plaintiffs repeat the allegations in paragraph 1 through 57, as though fully set forth herein.

80. By acts and practices described above, defendant discriminated against plaintiffs in refusing to re-hire them in positions to which they applied, and for which they were qualified, and instead hired less qualified non-African American employees for those positions, in violation of the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.*

81. Defendant is liable as an employer pursuant to the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.*

82. Plaintiffs are now suffering and will continue to suffer irreparable injury and monetary damages and damages for mental anguish and humiliation as a result of defendant's discriminatory acts.

**83.** Peters is entitled to such compensatory damages as are to be established at trial.

## SEVENTH CLAIM FOR RELIEF
## (RETALIATION IN REFUSAL TO HIRE)
in violation of the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.*
(on behalf of all three plaintiffs)

84. Plaintiffs repeat the allegations in paragraph 1 through 57, as though fully set forth herein.

85. By acts and practices described above, defendant retaliated against all three plaintiffs by illegally refusing to re-hire them into positions for which they were qualified because they engaged in the above-described protected activity, which included, but

was not limited to, opposing unlawful employment practices, in violation of the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.*

86. Defendant is liable as an' employer pursuant to the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.*

87. Plaintiffs are now suffering and will continue to suffer irreparable injury and monetary damages and damages for mental anguish and humiliation as a result of defendant's illegal conduct.

## EIGHTH CLAIM FOR RELIEF
## RETALIATION IN TERMINATIONS
in violation of the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.*
(on behalf of Irving and Hannah)

88. Plaintiffs repeat the allegations in paragraph 1 through 57, as though fully set forth herein.

89. By acts and practices described above, defendant retaliated against plaintiffs by illegally terminating from positions in which they were qualified because they engaged in the above-described protected activity, which included, but was not limited to, opposing unlawful employment practices, in violation of the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.*

90. Defendant is liable as their employer pursuant to the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.*

91. Plaintiffs are now suffering and will continue to suffer irreparable injury and monetary damages and damages for mental anguish and humiliation as a result of defendant's illegal conduct.

## NINTH CLAIM FOR RELIEF
**WRONGFUL DISCHARGE**
In violation of CT Gen'l Statutes 31-51m
(on behalf of Irving and Hannah)

92. Plaintiffs repeat the allegations in paragraph 1 through 57, as though fully set forth herein.

93. By acts and practices described above, defendant retaliated against plaintiffs by illegally terminating from positions in which they were qualified because they engaged in the above-described protected activity and complained about illegal practices that were in violation of Connecticut public policy and which included, but were not limited to, opposing unlawful employment practices.

94. Defendant is liable as their employer pursuant to Connecticut General statutes section 31-51m.

95. Plaintiffs are now suffering and will continue to suffer irreparable injury and monetary damages and damages for mental anguish and humiliation as a result of defendant's illegal conduct.

96. Peters is entitled to an award of compensatory and punitive damages, to be determined at trial.

### PRAYER FOR RELIEF

WHEREFORE, Counterclaimant prays as follows:

1. For such compensatory and punitive damages as shall be found at trial;
2. For attorney's fees, costs associated with this action and prejudgment interest;
3. For reinstatement;

4. For back pay;

5. For restoration of employee benefits and reimbursement of employee benefits;

6. Enjoining and permanently restraining these violations

7. For such other relief as the Court deems just.

**<u>JURY DEMANDED BY ALL PLAINTIFFS</u>**

Plaintiffs hereby demand, pursuant to Rule 38(b) of the federal Rule of civil Procedure, a trail by jury in this action.

Respectfully submitted,

PLAINTIFFS

BY:   *Kristan Peters-Hamlin*
Kristan Peters-Hamlin
Peters Hamlin LLC
1100 Summer St., 2nd Fl.
Stamford, CT, 06905

Dated: September 21, 2012