UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| KIM HANNAH, et al, :<br>    Plaintiffs, : | CIVIL ACTION NO.<br>3:12-CV-1361(JCH) |
| v. : | |
| WAL-MART STORES, INC. AND :<br>WAL-MART STORES EAST, LP :<br>    Defendants. : | AUGUST 30, 2013 |

**RULING RE: MOTION FOR PARTIAL JUDGMENT
ON THE PLEADINGS (Doc. No. 30)**

**I.    INTRODUCTION**

Plaintiffs Kim Hannah ("Hannah"), Tom Irving ("Irving"), and Michael ("Barham"), (collectively, "the plaintiffs"), bring this action against defendants Wal-Mart Stores, Inc. and Wal-Mart Stores East, L.P. (collectively, "Wal-Mart").  The plaintiffs allege that they were subjected to race discrimination and retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq, the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60 et seq. ("the CFEPA"), and section 31-51m of the Connecticut General Statutes, Conn. Gen. Stat. § 31-51m (prohibiting retaliation against employees who disclose an employer's illegal activities or unethical practices).

Pending before the court is Wal-Mart's Motion for Partial Judgment on the Pleadings (Doc. No. 30).  Wal-Mart moves, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, for judgment as to the plaintiffs' claims pursuant to the CFEPA and section 31-51m.  According to Wal-Mart, all of the plaintiffs' state law claims, on the face of the Complaint and as evidenced by documentation properly considered by virtue of their incorporation by reference in the Complaint, are time-barred.

## II. FACTS

According to the plaintiffs' Amended Complaint, they filed a timely claim with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and the Equal Opportunity Commission ("EEOC"). Am. Compl. (Doc. No. 6) ¶ 13; see also Defs.' Mem. in Supp. Mot. Judg. Pleadings at 2 (plaintiffs filed dual administrative charged with the CHRO and the EEOC on August 27, 2010). According to the Amended Complaint, the EEOC mailed a "Right to Sue' letter to plaintiffs on August 24, 2012. Id. The CHRO issued a "Release of Jurisdiction Notice" prior to the EEOC's mailing of its "Right to Sue" letter. Id.

Wal-Mart attached to its Motion for Partial Judgment on the Pleadings copies of the "Releases of Jurisdiction" from the CHRO. Defs.' Mem. in Supp. Mot. Judg. Pleadings, Ex. 2. The releases were issued on April 10, 2012. Id. The releases stated that, "[t]he Complainant must bring an action in Superior Court within 90 days of receipt of this release and within two years of the date of filing the complaint with the Commission unless circumstances tolling the statute of limitations are present." Id.

Wal-Mart also attached copies of the EEOC "Right to Sue' letters, which show that they were issued on June 19, 2012. Defs.' Mem. in Supp. Mot. Judg. Pleadings, Ex. 3. In their Opposition to Wal-Mart's Motion for Partial Judgment of the Pleadings, the plaintiffs attach the envelope in which the "Right to Sue" letters were mailed to the plaintiffs. Pls.' Mem. in Opp. Mot. Judg. Pleadings, Ex. H. The letter was mailed to plaintiffs' counsel on August 24, 2012. Id. In an email exchange between plaintiffs' counsel and a representative of the EEOC, a representative from the EEOC said they

attempted to fax the "Right to Sue" letters, but the letters "did not go through." Pls.' Mem. in Opp. Mot. Judg. Pleadings, Ex. E.

## III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) states that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). "The legal standards for review of motions pursuant to Rule 12(b)(6) and Rule 12(c) are indistinguishable." DeMuria v. Hawkes, 328 F.3d 704, 706 n. 1 (2d Cir.2003). On a motion for judgment on the pleadings, the court must accept all factual allegations in the non-moving party's pleading as true and draw all inferences in the non-moving party's favor. See Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 300 (2d Cir.2003). Courts have been unwilling to grant a 12(c) motion "unless the movant clearly establishes that no material issue of fact remains to be resolved and he is entitled to judgment as a matter of law." See id.

## IV. DISCUSSION

As a preliminary matter, plaintiffs argue that, by attaching exhibits to their Motion for Partial Judgment on the Pleadings, the defendants are asking the court to look outside the pleadings, which converts the Motion to a Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Pls.' Mem. in Opp. Mot. Judg. Pleadings at 1. According to plaintiffs, having converted the Motion to one for summary judgment, the defendants were required to submit an affidavit based on personal knowledge. Id. at 2 (citing Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 643 (2d Cir. 1988)).

Wal-Mart argues that, on a motion to dismiss, a court may consider documents that are integral to or referenced in the complaint or otherwise subject to judicial notice. Defs.' Reply (Doc.. No. 55) at 2 (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002)). Because the plaintiffs allege in their Amended Complaint the date on which the EEOC "Right to Sue" letters were mailed, that the CHRO had issued its "Release of Jurisdiction Notices" prior to the EEOC mailing, and that the federal Complaint is timely, Am. Compl. ¶ 13, the court agrees that the exhibits attached to Wal-Mart's Motion for Partial Judgment on the Pleadings—the letters referenced in the Amended Complaint—may be considered by the court without converting the Motion to one for summary judgment. See L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 422 (2d Cir. 2011) (stating that, on a 12(c) motion, "a complaint is [also] deemed to include . . . materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint"). Not only were the letters referenced in the Amended Complaint, they are also "integral" in that they are "integral to plaintiff[s] ability to pursue . . . [their] cause of action." Id. Therefore, the court will consider the exhibits attached to the briefings and will construe the Motion as filed—as one for partial judgment on the pleadings.[1]

Wal-Mart argues that they are entitled to judgment on the pleadings as to the plaintiffs' state law claims because they are time-barred. Defs.' Mem. in Supp. Mot.

---

[1] The court need not consider the plaintiffs' argument that, for the court to go outside the pleadings, such motions must be supported by a declaration or affidavit." Pl. Mem. in Opp. at 2. The case cited by plaintiffs, Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642-43 (2d Cir. 1988), stands for the proposition that motions for summary judgment are to be supported by affidavits based on personal knowledge. The court has not construed defendants' Motion to be one for summary judgment.

4

Judg. Pleadings (Doc. No. 31) at 4-7. The court will consider plaintiffs' CFEPA and section 31-51m claims separately.

### A. CFEPA

Section 46a-101(e) states that, "[a]ny action brought by the complainant in accordance with section 46a-100 shall be brought within ninety days of the receipt of the release from the commission." Conn. Gen. Stat. § 46a-101(e). Section 46a-102 further states that, "any action brought in accordance with section 46a-100 shall be brought within two years of the date of filing of the complaint with the commission . . ." Conn. Gen. Stat. § 46a-102.

Section 46a-100 provides a private right of action to individuals who obtain a release of jurisdiction from the Commission on Human Rights and Opportunities (CHRO) in accordance with section 46a-83. Conn. Gen. Stat. § 46a-100. The plaintiffs' CFEPA claims are brought in accordance with section 46a-100, and, therefore, are subject to sections 46a-101(e) and 46a-102. See Conn. Gen. Stat. § 46a-82(a) (stating that any person aggrieved by an alleged discriminatory practice may file a complaint with the CHRO); Conn. Gen. Stat. § 46a-83a (describing issuance of release after filing of complaint with CHRO).

"It is well settled that in Connecticut (unless otherwise specified by the legislature) a case is considered 'brought' for purposes of a statute of limitations on the date of service of the complaint upon the defendant." Kotec v. Japanese Educational Institute of New York, 321 F.Supp.2d 428, 431 (D. Conn. 2004). This state rule controls "in the context of state law claims brought under the district court's supplemental jurisdiction." Id. (citing Appletree Square I, Ltd. P'ship v. W.R. Grace & Co., 29 F.3d

5

1238, 1286 (8th Cir. 1994); Katsaros v. Serafino, 2001 WL 789322, at *2-3 (D. Conn. Feb. 28, 2001) (stating that, "it is the source of the right sued upon, and not the ground on which federal jurisdiction over the case is founded, which determines the governing law")). As this court has supplemental jurisdiction over the plaintiffs' claims pursuant to the CFEPA and section 31-51m, see Am. Compl. (Doc. No. 6) ¶ 11, it will apply this Connecticut state law for purposes of determining whether the plaintiffs have brought their state claims within the requisite statute of limitations.

There is no dispute that the plaintiffs filed their complaints with the CHRO on August 27, 2010, and that the CHRO issued their release on April 10, 2012. Defs.' Mem. in Supp. Mot. Judg. Pleadings, Exs. 1-2. "Normally it is assumed that a mailed document is received three days after its mailing . . . [a]nd normally it may be assumed, in the absence of challenge, that a notice provided by a government agency has been mailed on the date shown on the notice." Sherlock v. Montefiore Medical Cntr, 84 F.3d 522, 525-26 (2d Cir. 1996). Under this analysis, the court could conclude that plaintiffs received the CHRO "Release of Jurisdiction Notices" on April 13, 2012, which would obligate plaintiffs to bring their state CFEPA claims by July 12, 2012.[2] Conn. Gen. Stat. § 46a-101(e) (requiring action to be filed within ninety days of receipt of the release). However, plaintiffs did not file their claims until September 21, 2012, see Compl. (Doc. No. 1), did not request summonses until October 15, 2012, see Summons (Doc. No. 7),

---

[2] Plaintiffs do not argue in their Opposition that there was any delay in receiving the CHRO "Release of Jurisdiction Notices." However, in an email attached to the Opposition, plaintiffs' counsel states that, on May 15, 2012, "the CCHRO closed its files for my clients and issued Right to Sue Notices." Pls.' Mem. in Opp. Mot. Judg. Pleadings, Ex. C, at 2. Even if plaintiffs did not receive the release until May 15, 2012, their 90 day time frame would have ended on August 13, 2012. Furthermore, section 46a-102 requires plaintiffs to have filed their lawsuit within two years of filing their complaint with the CHRO. As the plaintiffs filed their CHRO complaint on August 27, 2010, the deadline for filing could be no later than August 27, 2012.

6

and did not serve Wal-Mart until October 16, 2012, see Certificate of Service (Doc. No. 8). As such, the plaintiffs' CFEPA claims appear to be time-barred. See Schlafer v. Wachenhut Corp., 837 F. Supp. 2d 20, 24 (D. Conn. 2011) (stating that "failure to satisfy the exhaustion provisions of CFEPA consistently results in dismissal for lack of subject matter jurisdiction").

However, plaintiffs argue that they are entitled to equitable tolling because they filed their state claims when they did because they were instructed by the government that they could not file their state claims until they received a "Right to Sue" letter from the EEOC. Pls.' Mem. in Opp. Mot. Judg. Pleadings at 2. "Equitable tolling allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances." Collazo v. Sikorsky Aircraft Corp., 2004 WL 1498130, at *2 (D. Conn. June 23, 2004) (quoting Johnson v. Nyack Hosp., 86 F.3d 8, 12 (2d Cir. 1996)). "[E]quitable tolling is only appropriate in rare and exceptional circumstances, in which a party is prevented in some extraordinary way from exercising his rights.'" Id. (quoting Zerilli–Edelglass v. N.Y. City Transit Auth., 333 F.3d 74, 80 (2d Cir.2003)). "There are three general reasons for which the Second Circuit has held equitable tolling to be appropriate: (1) if the plaintiff did not know of his or her claim due to misleading action by the defendant; (2) the plaintiff filed pleadings that were defective within the statutory limitation period; and (3) extraordinary circumstances impeded the plaintiff from filing." Simmons v. Terrace Healthcare Center, Inc., 2004 WL 555708, at *7 (S.D.N.Y. Mar. 19, 2004) (citing Miller v. Int'l Telephone and Telegraph Corp., 755 F.2d 20, 24 (2d Cir. 1985)).

7

There is some debate within the Second Circuit as to whether misleading conduct must have been at the hands of the defendant or whether misconduct by a third-party could make equitable tolling appropriate. Compare Angotti v. Kenyon & Kenyon, 929 F.Supp. 651, 656 (S.D.N.Y. 1996) (stating that, although equitable estoppel is triggered by the defendant's conduct, the doctrine of equitable tolling has been recognized where the plaintiff claims to have been misled by the EEOC rather than the defendant) with Vernon v. Cassadaga Valley Cent. Sch. Dist., 49 F.3d 886, 891 (2d Cir. 1995) (stating that, "the EEOC was not even a party defendant here; it is therefore questionable whether its acts could lead to equitable tolling). However, most recently, in Simmons v. Terrace Healthcare Center, Inc., the Southern District of New York—on remand and directed to consider the issue by the Second Circuit—held that, "the actions of a nonparty civil rights agency can cause equitable tolling." Simmons, 2004 WL 555708, at *7 (S.D.N.Y. Mar. 19, 2004).

Even assuming that misleading information from a third-party such as the CHRO could justify equitable tolling, Wal-Mart argues that the emails attached to the plaintiffs' Opposition do not support their claim that the CHRO misled them. Defs.' Reply at 5. In a May 25, 2012 email, plaintiffs' counsel wrote to a representative of the CHRO, "I have not gotten the right to sue back from the EEOC yet . . . Is it really necessary to get a release from them before filing, given that I never filed with them?" Pls.' Mem. in Opp., Ex. B. In response, plaintiffs' counsel was informed that, "[y]es, you need to get a Right to Sue from the EEOC." Id.

Plaintiffs argue that this email informs Attorney Peters-Hamlin that the plaintiffs "could not bring their state law claims in court until they also received their Notice of

8

Right to Sue from the EEOC." Pls.' Mem. in Opp. at 2. The court does not construe the email as plaintiffs do. The email appears to reference the fact that, "[a] Title VII claimant may file suit in federal court only if she has filed a timely complaint with EEOC and obtained a right-to-sue letter." Cornwell v. Robinson, 23 F.3d 694, 706 (2d Cir. 1994). The fact that the plaintiffs could not file their Title VII claims without a Right to Sue letter says nothing about their obligation to file their state law claims within the statute of limitations.

However, the court notes that "[t]here need not have been affirmative misrepresentation in order to effect equitable tolling: ambiguous language may be sufficient," Simmons, 2004 WL 555708, at *7. In Simmons, the New York City Commission on Human Rights told the plaintiff he could file a charge after his arbitration hearing, but did not inform the plaintiff that he only had 300 days from the date of his termination to do so. Id. Like the statement in Simmons, the response here was similarly ambiguous in that it did not clarify that the plaintiffs did not need to file their CFEPA and Title VII claims at the same time. Further, the court finds that the email is ambiguous because the CHRO representative does not specify whether the plaintiffs needed to obtain a release before filing both their federal and state claims or only the Title VII claim.

However, there is case law to suggest that, "equitable considerations . . . will not save a plaintiff represented by counsel from EEOC filing requirements." Angotti, 929 F.Supp. at 658; see also Keyse v. California Texas Oil Corp., 590 F.2d 45, 47-48 (2d Cir. 1978) (failing to enlarge the doctrine of equitable estoppel against a defense of untimeliness when the plaintiff received misinformation from the EEOC, but was

9

represented by counsel at the time). In Bass v. Bair, the plaintiff argued that she was entitled to equitable tolling because the Federal Deposit Insurance Corporation informed her that she had 90 days to file her Title VII claim after she received the agency's final administrative action, when in actuality, the 90 day time period began to run upon receipt by plaintiff's counsel. Bass v. Bair, 514 F.Supp.2d 96, 99-100 (D.D.C. 2007). The court held that equitable tolling was inappropriate because plaintiff was represented by experienced counsel whom the court believed must have known of the filing requirements. Id. at 100 (citing Wagher v. Guy's Foods, Inc. 768 F.Supp. 321, 326 (D. Kan. 1991) (stating that "whether [plaintiff's attorney] Mr. Shapiro was or was not aware of Irwin [the decision setting forth the filing requirement], he should have been")).

The facts at hand are slightly distinguishable in that the plaintiffs argue that the CHRO misled their counsel, as opposed to misleading them directly. However, the fact remains that plaintiffs were represented by experienced counsel who should have been aware of the requirements for filing CFEPA claims.[3] Given their represented status and the fact that nothing in the CHRO's response to counsel was affirmatively misleading, see Angotti, 929 F.Supp. at 658 (denying motion to dismiss with regard to equitable tolling because there was evidence that the pro se plaintiff, although an experienced attorney, was <u>affirmatively misled</u> by the EEOC interviewer) (emphasis added), the court concludes that the circumstances are not sufficiently exceptional to justify equitable tolling. Therefore, the court grants Wal-Mart's Motion for Partial Judgment on the Pleadings as to plaintiffs' CFEPA claims.

---

[3] Attorney Peters-Hamlin states in an email response to the EEOC that she has "been the attorney of record from the beginning." Pl.'s Mem. in Opp., Ex. E. Therefore, there can be no claim that Attorney Peters-Hamlin was unaware of the posture of the case.

B.  Section 31-51m

Under section 31-51m, plaintiffs have 90 days after "final administrative determination" to bring a civil action for retaliation. Conn. Gen. Stat. § 31-51m(c). Wal-Mart notes that the "final administrative determination" could be either the CHRO determination—the issuance of the "Release of Jurisdiction Notices"—or the EEOC determination—the issuance of the "Right to Sue" letters. Defs.' Mem. in Supp. Mot. Judg. Pleadings at 6. If based on the CHRO determination, the section 31-51m claim is time-barred for the same reason plaintiffs' CFEPA claims are time-barred. See supra, p. 6. Therefore, the court will only consider whether plaintiffs "brought" the action within the 90 days of the EEOC "final administrative determination."

Defendants argue that a section 31-51m suit premised on the plaintiff's whistleblowing activity with the EEOC had to have been brought by October 8, 2012, because the EEOC issued the "Right to Sue" letters on June 19, 2012. Defs.' Mem. in Supp. Mot. Judg. Pleadings at 6. However, plaintiffs argue that June 19, 2012, cannot serve as the date of the "final administrative determination" because the EEOC did not mail the "Right to Sue" letters to plaintiffs until August 24, 2012.

If June 19, 2012 was the date of "final administrative determination," plaintiffs would have had until September 17, 2012, to bring their section 31-51m claims. Conn. Gen. Stat. § 31-51m(c) (requiring plaintiffs to bring a civil action within 90 days). If August 24, 2012 was the date of "final administrative determination," plaintiffs would have had until November 22, 2012, to bring their section 31-51m claims. Plaintiffs served Wal-Mart on October 16, 2012, see Certificate of Service; therefore, their claims are timely only if the "final administrative determination" was made on July 18, 2012, or

11

later, see supra, p. 5; Kotec, 321 F.Supp.2d at 431 ("It is well settled that in Connecticut (unless otherwise specified by the legislature) a case is considered 'brought' for purposes of a statute of limitations on the date of service of the complaint upon the defendant.") (emphasis added).

The court has not found clear case law clarifying whether a "final administrative determination" is made on the day a decision is issued or the day a party receives notice of the administrative decision. See e.g., Nyenhuis v. Metropolitan Dist. Com'n, 604 F.Supp.2d 377, 384 (D. Conn. 2009) (determining that claims were time-barred because the plaintiffs brought their action 95 days after issuance and 92 days after receipt of the EEOC Dismissal and Notice of Rights). However, in Sowell v. DiCara, the Superior Court of Connecticut determined the date of the "final administrative determination" by looking to the date written on the release of jurisdiction letter from the CHRO, which suggests the relevant date is the date of issuance. Sowell v. DiCara, 2013 WL 2945322, * 4 (Conn. Super. Ct. May 22, 2013); see also Levasque v. Town of Vernon, 341 F.Supp.2d 126, 141 (D. Conn. 2004) (stating that 90 day time period expired on July 16, 2001, as the plaintiff's grievance was denied on April 16, 2001). The court believes this interpretation of the statute is appropriate because, upon review of similar statutes, the court concludes that, when the legislature wanted the time period to run from the date on which a determination is sent or received, it says so explicitly. See Conn. Gen. Stat. § 46a-101(e) ("Any action brought by the complainant in accordance with section 46a-100 shall be brought within ninety days of the receipt of the release from the commission.") (emphasis added); Conn. Gen. Stat. 46a-83(e)(2) ("If the investigator makes a finding that there is reasonable cause to believe that a

12

violation of section 46a-64c has occurred, the complainant and the respondent shall have twenty days <u>from sending of the reasonable cause finding</u> to elect a civil action in lieu of an administrative hearing. . . If either the complainant or the respondent requests a civil action, the commission, through the Attorney General or a commission legal counsel, shall commence an action pursuant to subsection (b) of section 46a-89 <u>within ninety days of receipt of the notice of election</u>") (emphasis added); Conn. Gen. Stat. 4-183(c)(1) ("Within forty-five days <u>after mailing of the final decision</u> under section 4-180 or, if there is no mailing, within forty-five days after personal delivery of the final decision . . . a person appealing as provided in this section shall serve a copy of the appeal on the agency that rendered the final decision . . .").

Therefore, the date of the "final administrative determination" was June 19, 2012, which was the date of issuance and the date listed on the "Right to Sue" letter. Defs.' Mem. in Supp. Mot. Judg. Pleadings, Ex. 3. According to the statute, the plaintiffs needed to bring their section 31-51m claims within 90 days, which was September 17, 2012. Conn. Gen. Stat. § 31-51m(c). As plaintiffs did not file their claims until September 21, 2012, and did not serve Wal-Mart until October 16, 2012, their section 31-51m claims are time-barred.

To the extent that plaintiffs argue that they are entitled to equitable tolling because the EEOC failed to provide them with notice of the "Right to Sue" until August 24, 2012, when it mailed a copy of the letter to plaintiff's counsel, the court finds this argument unavailing. Attached to their Opposition, the plaintiffs include an email exchange between their counsel and an EEOC representative. See Pl.'s Mem. in Opp. Mot. Judg. Pleadings, Ex. E. In that email, plaintiff's counsel attempts to have the

EEOC send new "Right to Sue" letters dated for August 24, 2012—the date on which the letters were mailed—in place of the letters dated for June 19, 2012. Id. In the email, plaintiff's counsel is clearly aware of the fact that the date of issuance determines the amount of time she has to file suit. Id. (stating that, "[g]iven that I have only ninety days to file on behalf of these clients . . . it is critical that the false date of July 19 as the mailing date is changed to the accurate date stamped on the outside of the envelope"). In response, the EEOC representative stated that, "I don't know what you mean by[ ] 'false' date??? The dates are correct. This office initially issued those right to sues June 19 . . ." Id.

The emails show that the EEOC attempted to fax the letters to plaintiffs' counsel, but they did not go through, which is why they ultimately mailed the letters on August 24, 2012. Id. Had plaintiffs' counsel not received the "Right to Sue" letters until after the 90 days had expired, plaintiffs would have a strong case for equitable tolling. However, plaintiffs' counsel received the "Right to Sue" letters three weeks prior to the end of the 90 day deadline. Id. She was aware of the importance of the date of issuance—as reflected on the letters—because she attempted to obtain new letters with new dates. However, she did not obtain new letters and instead received clarification from the EEOC that June 19 was the initial date of issuance. Therefore, counsel should have known the date on which she had to file her clients' claims. Although she cited her busy schedule, including another trial and her attendance at the Democratic National Convention, id., she still had three weeks in which to do so. Simmons, 2004 WL 555708, at *8 ("A litigant who fails to act diligently cannot seek solace in principles of equity."). Therefore, the court concludes that plaintiffs' section 31-51m claims are still

14

time-barred and grants the defendants' Motion for Partial Judgment on the Pleadings as to plaintiffs' section 31-51m claims.

## V. CONCLUSION

For the foregoing reasons, Wal-Mart's Motion for Partial Judgment on the Pleadings (Doc. No. 30) is **GRANTED**.

**SO ORDERED**.

Dated at New Haven, Connecticut, this 30th day of August, 2013.

      /s/ Janet C. Hall
Janet C. Hall
United States District Judge