```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT


KIM HANNAH, TOM IRVING, and   :
MICHAEL BARHAM                :
                              :
                              :
v.                            :       CIV. NO. 3:12CV1361 (JCH)
                              :
WAL-MART STORES, INC., and    :
WAL-MART STORES EAST, L.P.    :
```

<u>RULING ON DEFENDANTS' MOTION TO COMPEL
AND MOTION FOR SANCTIONS [DOC. #130]</u>

Pending before the Court is a motion by defendants Wal-Mart Stores, Inc. and Wal-Mart Stores East, L.P. ("defendants" or "Walmart"), to compel rule compliant responses from plaintiffs Kim Hannah, Tom Irving, and Michael Barham (collectively the "plaintiffs") to written discovery, to compel Mr. Irving's deposition, and for the imposition of sanctions. [Doc. #130]. For the reasons that follow, the Court **GRANTS IN PART AND DENIES IN PART** defendants' motion to compel, and **DENIES without prejudice to re-filing** defendants' motion for sanctions.

I.  <u>BACKGROUND</u>

Plaintiffs bring this employment discrimination action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, <u>et</u> <u>seq.</u>, and the Connecticut Fair Employment Practices Act ("CFEPA") for race discrimination, retaliation, and wrongful discharge under Connecticut common law. [Amend. Compl., Doc. #6, at ¶1].[1]  Plaintiffs, all African Americans, allege they were managers at Connecticut Walmarts, when their employment was

---

[1] On August 30, 2013, Judge Hall granted defendants' motion for partial judgment on the pleadings as to plaintiffs' CFEPA and retaliation (Connecticut General Statutes section 31-51m) claims. [Doc. #79].

1

terminated in 2010 as a result of restructuring. [Id. at ¶¶2-3]. Plaintiffs Hannah and Irving were allegedly employed as Market Human Resources Mangers, and plaintiff Barham as a Market Asset Protection Manager. [Id. at ¶¶5-7]. Plaintiffs further allege that the restructuring was merely a subterfuge or pretext for racial discrimination. [Id. at ¶3].

The Court presumes familiarity with the procedural background and the parties' prior discovery obstacles, which are detailed at length in the Court's previous rulings and orders. See Doc. ## 87, 118, 127. The present dispute involves plaintiffs' responses to defendants' requests for production, which seek the same forty seven (47) categories of documents from each plaintiff. Plaintiffs objected to each of the document requests, but did produce documents. Defendants generally contend that the objections and responses fail to comply with the basic requirements of Rule 34 of the Federal Rules of Civil Procedure.

On May 23, 2014, the Court held an in-person discovery conference on the record to address the matters raised in defendants' motion to compel, and other unresolved discovery issues.

## II.  **MOTION TO COMPEL**

Defendants seek an order compelling plaintiffs to "properly respond" to defendants' written discovery or, in the alternative, an order barring plaintiffs from submitting any responsive material in support of their claims. Defendants also

seek to compel the deposition of plaintiff Irving.  Plaintiffs generally argue that defendants' motion to compel is moot.

### A. Legal Standard

Rule 26(b)(1) of the Federal Rules of Civil Procedure sets forth the scope and limitations of permissible discovery. Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party.  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1).  Information that is reasonably calculated to lead to the discovery of admissible evidence is considered relevant for the purposes of discovery.  See Daval Steel Prods. v. M/V Fakredine, 951 F.2d 1357, 1367 (2d Cir. 1991); Morse/Diesel, Inc. v. Fidelity & Deposit Co., 122 F.R.D. 447, 449 (S.D.N.Y. 1988). "The party resisting discovery bears the burden of showing why discovery should be denied." Cole v. Towers Perrin Forster & Crosby, 256 F.R.D. 79, 80 (D. Conn. 2009).

### B. Discussion

Defendants argue that plaintiffs' untimely and boilerplate objections should be overruled, and that plaintiffs should be ordered to provide rule compliant responses to defendants' requests for production. Plaintiffs respond that their objections/production are not untimely, and are complete.

1. <u>Responses to Written Discovery</u>

Leaving aside plaintiffs' objections, which the Court will later discuss, defendants take issue with plaintiffs' responses that, "Without waiving said objection, see documents produced." [Doc. #131, 8]. Defendants state that plaintiffs produced a single set of documents without delineating which plaintiffs produced which documents, or to which request the documents were responsive. [<u>Id.</u> at 8-9]. Rule 34(b)(2)(E)(i) mandates that, "A party must produce documents as they are kept in the usual course of business or must organize and label them to the categories in the request." Fed. R. Civ. P. 34(b)(2)(E)(i). "This provision was added to Rule 34(b) to prevent parties from 'deliberately… mix[ing] critical documents with other in the hope of obscuring significance.'" <u>Johnson v. Kraft Foods N. America</u>, 236 F.R.D. 535, 540 (D. Kan. 2006) (citing <u>See</u> Advisory Committee Note for 1980 Amendment to Rule 34 (quoting Report of the Special Committee for the Study of Discovery Abuse, Section of Litigation of the American Bar Association (1977))). Plaintiffs have not argued, nor have they presented any evidence suggesting, that they produced the documents as kept in the usual course of business. <u>See</u> <u>Pass & Seymour, Inc. v. Hubbell Inc.</u>, 255 F.R.D. 331, 334 (N.D.N.Y. 2008) (citations omitted) (noting that a party selecting to produce documents as they are maintained in the usual course of business "bears the burden of demonstrating that the documents made available were in fact produced consistent with that mandate."). Therefore, plaintiffs were required to organize and label the documents to correspond

4

to each request. Plaintiffs have not done so. Because the documents have already been provided, within thirty (30) days of this Ruling each plaintiff shall serve amended discovery responses identifying by bates number which documents are responsive to each request. If a plaintiff does not have any documents responsive to a request, that plaintiff shall provide a sworn statement that despite a diligent search, no responsive documents were found. Alternatively, if documents have been produced in response to a request, each plaintiff shall provide a sworn statement that after a diligent search, all responsive documents have been produced. See <u>Vazquez-Fernandez v. Cambridge College, Inc.</u>, 269 F.R.D. 150, 154 (D.P.R. 2010) (supplemental response to request for production, which stated that all documents had been produced, was "an answer" that required signature under oath by party).

    2. <u>Objections</u>

As to plaintiffs' "boilerplate objections", the Court will not individually rule on each of the forty seven (47) objections asserted, but instead will categorize the objections into groups, as appropriate.

As previously recognized in this district,

> The party resisting discovery bears the burden of demonstrating that its objections should be sustained, and pat, generic, non-specific objections, intoning the same boilerplate language, are inconsistent with both the letter and the spirit of the Federal Rules of Civil Procedure. An objection to a document request must clearly set forth the specifics of the objection and how that objection relates to the documents being demanded. The objecting party must do more than simply intone the familiar litany that the [requests] are burdensome, oppressive or overly broad. Instead,

5

> the objecting party must show specifically how, despite the broad and liberal construction afforded the federal discovery rules, each request is not relevant or how each question is overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden.

In re Priceline.com Inc. Sec. Litig., 233 F.R.D. 83, 85 (D. Conn. 2005) (citations omitted). With this legal framework in mind, the Court turns to plaintiffs' objections.

### *a. Boilerplate Objections*

#### *i.   Attorney-Client and Work Product Objections*

Plaintiffs assert numerous objections on the grounds of attorney client privilege and work product production. Defendants state that plaintiffs have failed to produce a privilege log listing the documents withheld on this basis. To the extent that plaintiffs have withheld an otherwise discoverable document on the basis of privilege or work product, Rule 26(b)(5) requires that plaintiffs "describe the nature of the documents, communications, or tangible things not produced or disclosed […]." Fed. R. Civ. P. 26(b)(5)(A)(ii); see also  D. Conn. L. Civ. R. 26(e). ("[W]hen a claim of privilege or work product protection is asserted in response to a discovery request […] the party asserting the privilege or protection shall provide […] a privilege log.").  At the May 23, 2014 discovery conference, plaintiffs' counsel stated on the record that no privilege log had been produced pursuant to an understanding between counsel. Specifically, plaintiffs' counsel represented that the only responsive and privileged documents in plaintiffs' possession are those with Attorney Peters-Hamlin,

6

which defense counsel does not seek. Plaintiffs' counsel stated that "everything else" had been produced.  Therefore, based on this understanding, and consistent with the directives set forth in section II(B)(1), supra, for those requests objected to on the basis of attorney-client privilege and/or work product protection, each plaintiff shall provide a sworn statement in their supplemental responses to defendants' requests for production that after a diligent search, all responsive documents have been produced or that no responsive documents have been found.

    *ii.  Relevancy Objections*

Plaintiffs repeatedly object[2] that certain requests are "either irrelevant, or not reasonably calculated to lead to admissible evidence." The Court **OVERRULES** these objections in light of plaintiffs' failure to demonstrate how these requests are irrelevant despite the broad and liberal construction afforded by the federal discovery rules.

    *iii. Objections re: documents in defendants' control*

Plaintiffs also object to numerous requests[3] on the grounds that the request "calls for plaintiff to produce documents that are unduly burdensome because they are, or should be, already in defendants' control and/or possession or which is or are obtainable from some other source that is more convenient, less burdensome, or less expensive." Defendants argue that these

---

[2] See, e.g., Doc. #131-2, Ex. 6, responses to requests 8, 9, 12-22, and 37.

[3] See, e.g., Doc. #131-2, Ex. 6, responses to requests 2-22, 24-26, 28, 31-34, 38-47.

7

objections are deficient because, "Plaintiffs do not specify in what way the requests are unduly burdensome, they do not adequately describe the documents to enable Walmart to find them elsewhere, and they do not specify where or how Walmart can secure the documents in a fashion that is 'more convenient, less burdensome, or less expensive." [Doc. #131, 7]. Plaintiffs respond that their explanations are sufficient and, further, that the parties discussed and resolved these objections.[4] [Doc. #137, 5]. Defendants, however, maintain that they are "particularly concerned with Plaintiffs' continued assertion that they are not required to produce documents they claim are already in Walmart's possession." [Doc. #139, 2].

    The Court agrees that plaintiffs' objections on this ground are generally insufficient. However, rather than overrule the objections, the Court will permit plaintiffs to serve amended objections that specify the responsive documents that are or should be in defendants' control, and/or specify where and how defendants may obtain such documents.  Plaintiffs shall also indicate any agreements reached on these objections, as is referenced in their response to the motion to compel. If after receiving plaintiffs' amended objections defendant still has

---

[4] Plaintiffs' response states that "in subsequent email dialogues about the nature and substance of the objections (regarding over breadth and burden), the parties discussed in more detail the nature of plaintiffs' objections and were able to work out those objections." [Doc. #137, 5].  It is unclear from the parties' written submissions and discussions during the conference exactly which objections were worked out. Accordingly, to the extent that any agreements have been reached regarding plaintiffs' objections, the parties may adhere to, and proceed according with, such agreements. The Court does not intend to supersede any agreements between the parties by virtue of this Ruling.

8

concerns, the parties may contact the Court for a telephone conference.

> *iv. Objections re: scope and burden*

Plaintiffs also assert numerous objections[5] that the requests are "overly broad, unduly burdensome, harassing, unreasonably cumulative, [and] duplicative…" Plaintiffs have failed to meet their burden of showing how the subject requests are overly broad, unduly burdensome, harassing, unreasonably cumulative, or duplicative. Therefore, the Court **OVERRULES** these objections.

> **b. Assertion of Doctor-Patient Privilege**

Plaintiffs assert objections to two requests[6] on the grounds of doctor-patient privilege. Defendants argue that plaintiffs have waived the privilege in light of plaintiffs' claims of irreparable injury and monetary damages for "mental anguish and humiliation" arising from defendants' alleged conduct. [Doc. #131, 13]. Plaintiffs respond that they have not been able to seek psychological treatment, and other medical information is irrelevant because plaintiffs have not claimed any physical injury. [Doc. #137, 7-8]. Unfortunately, both counsel miss the mark with respect to their arguments. The parties do not differentiate between the doctor-patient privilege, and the

---

[5] See, e.g., Doc. #131-2, Ex. 6, responses to requests 7-12, 14-16, 18-22, 24-26, 28, 31-34, 38-47.

[6] See Doc. #131-2, Ex. 6, 7, and 8, responses to requests 27 ("All documents that support, refer, or relate to your claim that you suffered emotional distress as a result of Defendant's alleged conduct.") and 29 ("All documents that relate or refer to the elements, determination and computation of your claim for damages in this case, including… all medical bills…"). It bears noting that plaintiffs did not assert relevancy objections to these requests.

9

psychoanalyst-patient privilege.  For example, defendant argues waiver of the psychotherapist-patient privilege, while plaintiffs' objections are premised on the doctor-patient privilege.  Therefore, the Court will address the difference between the two privileges, as well as whether federal common law or Connecticut law applies to the privilege(s) asserted.

In Jaffee v. Redmond, the Supreme Court held that "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence." 518 U.S. 1, 15 (1996).  In recognizing this privilege, the Jaffee Court "explicitly distinguished between treatment by a psychotherapist and treatment by a medical, non-mental health provider." E.E.O.C. v. Nichols Gas & Oil, Inc., 256 F.R.D. 114, 119 (W.D.N.Y. 2009). "Indeed, a physician-patient privilege was not one of the nine privileges recognized in an earlier draft of Rule 501 and has not traditionally been recognized at common law." Id. (citing Whalen v. Roe, 429 U.S. 589, 602 n. 28 (1977) ("[t]he physician-patient evidentiary privilege is unknown to the common law"); Northwestern Mem'l Hosp. v. Ashcroft, 362 F.3d 923, 925-26 (7th Cir. 2004) (noting absence of federal medical records privilege); Kunstler v. City of New York, No. 04CIV1145(RWS)(MHD), 2006 WL 2516625, at *6 n. 7 (S.D.N.Y.  Aug. 29, 2006) (noting federal courts' rejection of the physician-patient privilege)).  The Second Circuit has likewise recognized a difference between a physician-patient and psychotherapist-

patient privilege. See Nichols, 256 F.R.D. at 119-20 (declining to read Sims v. Blot, 534 F.3d 117 (2d Cir. 2008), "as expanding the scope of the psychotherapist-patient privilege recognized in Jaffee to include medical providers who are not psychotherapists, even if the treatment sought from the medical provider was a referral to a mental health professional or a prescription for medication to treat anxiety or depression."). After a careful review of the Nichols decision, the Court is persuaded that the psychotherapist-patient privilege does not extend to medical providers who are not licensed psychotherapists.

That said, plaintiffs represent that they have not been able to afford mental health treatment and, therefore, no documents from mental health practitioners exist. [Doc. #140, 5-6].[7] Thus, whether the psychotherapist-patient privilege applies or has otherwise been waived is moot.  The question next becomes whether the physician-patient privilege protects the medical records sought. The Court finds that it does not.

"Federal Rule of Evidence 501 dictates that, in general, 'privilege', is interpreted pursuant to federal common law except that 'in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.'" Tavares v. Lawrence Mem'l Hosp., No. 3:11-CV0770(CSH), 2012 WL 4321961, at *3 (D. Conn. Sept. 20, 2012) (quoting Fed. R. Evid. 501). Although the state of Connecticut

---

[7] Plaintiff Irving also admitted in deposition testimony that he did not see any kind of psychological care provider. [Doc. # 139-2, Ex. 13, Pl. Irving Dep. Tr.,  Apr. 19, 2014, 293:9-17].

11

has legislated a physician-patient privilege, see C.G.S.A. §52-1460, "state privilege laws do not govern in federal question cases." Nichols, 256 F.R.D. at 122 (compiling cases). Accordingly the Court must determine whether federal common law or the Connecticut state statute applies to the doctor-patient privilege asserted. "To do so, a district court in a federal proceeding must examine the claims for which the discovery is sought and the basis for the Court's jurisdiction." Tavares, 2012 WL 4321961, at *5.

Plaintiffs invoke the subject matter of the Court pursuant to 28 U.S.C. § 1331, "federal claim" jurisdiction with respect to their Title VII claims. [Doc. #6, ¶10].[8] Plaintiffs allege damages for "mental anguish and humiliation", for which defendants seek discovery, in both their federal claims.

"[T]he Second Circuit has held that where there is federal question jurisdiction and the evidence sought is relevant to both the federal and state claims, 'courts consistently have held that the asserted privileges are governed by the principles of federal law.'" Tavares, 2012 WL 4321961, at *6 (compiling cases).  Accordingly, where plaintiffs have filed federal claims for violation of Title VII, and can no longer pursue the alleged state law claims, the asserted privilege is governed by the federal common law. Therefore, the Connecticut physician-patient privilege does not control here, and plaintiffs cannot claim protection under it.  See Nichols, 256 F.R.D. at 122 ("[Where

---

[8] Plaintiffs also invoked supplemental jurisdiction over the now dismissed Connecticut state law claims. [Doc. #6, ¶11].

12

the claims arise under federal law, the claimants cannot claim protection under the New York physician-patient privilege.").

Accordingly, based on the foregoing, the Court **OVERRULES** plaintiffs' objections on the basis of physician-patient privilege. Nevertheless, the plaintiffs' "do maintain a privacy interest in their medical records due to the sensitive nature of the information contained therein." Nichols, 256 F.R.D. at 122. Like the defendants in the Nichols matter, here defendants argue that they are entitled to plaintiffs' medical records "to explore any alternate source of Plaintiff's alleged emotional distress." [Doc. #131, 14]. However, this does not give defendants "an unfettered right to pursue discovery into [the plaintiffs'] entire medical history." Manessis v. New York City Dep't of Trans., No. 02 CIV. 359SASDF, 2002 WL 31115032, at *2 (S.D.N.Y. Sept. 24, 2002). Accordingly, while the disclosure of some medical records may be appropriate, the wholesale disclosure of records is not.

Deposition testimony elicited from plaintiff Irving indicates that he suffered mental anguish, stress, weight loss, sleep disruption, and other consequences as a result of Walmart's conduct. [See, e.g., Doc. # 139-2, Ex. 13, Pl. Irving Dep. Tr., Apr. 19, 2014, 289:21-290:1; 293:18-294:15; 297:2-8; 300:23-302:5; 307:13-18]. Defendants represent that "[p]laintiffs Barham and Hannah are expected to testify similarly." [Doc. #139, 4]. To the extent that plaintiffs Barham and Hannah have so testified, then defendants should be entitled to examine their medical records that reflect "any consultation

13

with or treatment by a medical provider for complaints for mental anguish regardless of the cause, or reflect medical conditions the symptoms of or treatment for which could have resulted in the same type of physical symptoms the plaintiffs have described." <u>Nichols</u>, 256 F.R.D. at 123. Therefore, plaintiffs are directed to provide defendants with signed HIPAA releases within fourteen (14) days of this order.[9]

Finally, to assure that the plaintiffs' privacy interests are adequately protected, the parties are directed to confer and submit a proposed joint protective order governing the production and use of the medical information and records to be disclosed. Alternatively, the plaintiffs may designate the medical records pursuant to Judge Hall's standing protective order.

### c. Mitigation Documents

Defendants next take issue with plaintiffs' objections to document requests regarding plaintiffs' efforts to secure employment, the results of those efforts, and any related income information. In addition to the boilerplate objections noted above, plaintiffs also object to the following requests on the

---

[9] At the May 23, 2014 discovery conference, plaintiffs' counsel asserted that production of plaintiffs' medical records were not warranted in light of plaintiffs waiving damages for physical injuries. Counsel's argument again misses the mark. As defense counsel noted, production of the medical records are warranted so that defendants may test plaintiffs' claims of mental anguish. Specifically, defendants are entitled to these records to see whether plaintiffs ever complained of mental anguish to a medical provider in relation to their terminations, and whether any other matters contributed to or caused plaintiffs' alleged mental anguish.

14

basis they are "about a matter that is better addressed through a deposition,"[10]

> Request No. 12: All documents that relate or refer to all positions for which you applied since the termination of your employment with Defendant, including positions with companies other than Defendant, and written authorization in the form attached hereto to obtain copies of said records.
>
> Request No. 30: Your federal income tax returns, including all schedules and W-2 forms, filed for the tax year 2009 to the time of trial, and written authorization in the form attached hereto to obtain copies of said federal income tax returns.
>
> Request No. 31: Any and all documents that refer or relate to the efforts that you made to find employment after April 9, 2010.
>
> Request No. 32: All documents, which relate or refer to any claim(s) you made for any type of government (federal, state, or local) benefits assistance during or subsequent to your employment with Defendant, and written authorization in the forms attached hereto to obtain copies of said records.
>
> Request No. 33: All documents reflecting, concerning or evidencing your income, salary, pay or any remuneration from any source, other than Defendant, from January 1, 2008 to the present.
>
> Request No. 34: Any documents which relate or refer to your employment concurrent with or subsequent to your employment with Defendant, including but not limited to, job applications, personnel policies, employee handbooks, benefit plans, job evaluations, pay stubs, and job descriptions.
>
> Request No. 37: All documents evidencing the agreement between you and your lawyer for payment of your lawyer's fees, costs and disbursements in connection with this Action.

In their opposition, plaintiffs assert that they have produced "substantial mitigation evidence [] after the parties discussed plaintiffs' objection and the defense arguments to the contrary, and the parties came to an agreement about additional production… Thus this issue is now moot." [Doc. #137, 6]. In

---

[10] See, e.g., Doc. #131-2, Ex. 6, responses to requests 12, 30-34, and 37.

15

their reply, defendants submit that plaintiffs have failed to produce <u>all</u> mitigation evidence, and that production of self-prepared lists of job search efforts is insufficient. [Doc. #139]. In a sur-reply, plaintiffs again argue that defendants' statements are false, and that this issue is now moot in light of additional discovery efforts undertaken.

Plaintiffs' objection that the information sought is best left for questioning at deposition is improper and **OVERRULED** as to requests 12, 31-34, and 37. At the May 23, 2014 discovery conference, plaintiffs' counsel represented that plaintiffs Irving and Hannah were in the process of gathering, or had already provided counsel with, with additional documents responsive to these requests. Plaintiffs shall produce these documents, as further discussed during the conference, within fourteen days of this order. Plaintiffs' counsel further represented that plaintiff Barham has produced all mitigation related evidence.  Therefore, consistent with the directives set forth in section II(B)(1), <u>supra</u>, for the above mitigation-related requests, each plaintiff shall provide a sworn statement in their supplemental responses to defendants' requests for production that after a diligent search, all responsive documents have been produced or that no responsive documents have been found.

Defendants also seek the production of plaintiffs' tax returns in response to request 30. Defendants argue that the tax returns are relevant because they are likely to reveal information bearing on the issues of damage and mitigation.

16

[Doc. #131, 17-18]. Plaintiffs indicate that defense counsel had an opportunity to inspect the tax returns at plaintiffs' counsel's office, and that this issue is now moot. [Doc. #137, 6-7]. Plaintiffs also state that they had represented that the tax returns would be produced, if defendants agreed to a confidentiality stipulation regarding the documents' use. [Id.]. Defendants reply that their inspection of the tax returns does not excuse plaintiffs from their production obligations.[11]

From the parties' filings, and after further discussion at the discovery conference, it appears that plaintiffs were willing to produce their tax returns, albeit subject to a confidentiality designation and a stipulation restricting defendants' ability to challenge the designation. The Court will order that plaintiffs produce copies of their tax returns within thirty (30) days of this Ruling, subject to a confidentiality designation pursuant to Judge Hall's standing protective order.

---

[11] At the May 23, 2014 discovery conference, plaintiffs argued that they fulfilled their production obligations under Rule 34 by permitting defense counsel to inspect plaintiffs' tax returns. Indeed, in their opposition to the motion to compel, plaintiffs assert that defense counsel was permitted to "review the tax information in plaintiffs' counsel's office", and therefore defendants' motion to compel on this issue is moot. [Doc. #138, 6-7]. Defendants disagreed that plaintiffs satisfied their production obligations by merely permitting inspection. The Court agrees that under the present circumstances, inspection of the documents alone does not fulfill plaintiffs' production obligations. To do so, plaintiffs were also required to permit copying of the tax returns. See Clever View Inv., Ltd. v. Oshatz, 233 F.R.D. 393, 394 (S.D.N.Y. 2006) (citation omitted) ("[A] party need only make requested documents available for inspection and copying; it need not pay copying costs."); Hoth v. Lantz, No. 3:10cv1081(WWE), 2012 WL 3648764, at *1 (D. Conn. Aug. 24, 2012) ("Rule 34(a), Fed. R. Civ. P., permits any party to serve a request that documents be produced for inspection and copying."). Simms v. Ctr. for Corr. Health and Policy Studies, 272 F.R.D. 36, 39-40 (D.D.C. 2011) (plaintiff complied with production obligations by allowing defendant to inspect and copy documents at plaintiff's counsel's office); 7 JAMES WM. MOORE, ET AL., MOORE'S FEDERAL PRACTICE §34.13[2][a] (3d ed. 2013) (citing Sims, 272 F.R.D. at 39-40)("In lieu of actual production of documents, a party may respond to a request for production by allowing the requesting party to inspect and copy the documents at a place designated by the responding party.").

In light of plaintiffs' privacy concerns, plaintiffs may produce versions that redact plaintiffs' social security numbers and any other sensitive personal information. Plaintiffs may also redact information that has no bearing on their claims for damages, such as information pertinent to a spouse's income.

    3. Deposition of Plaintiff Irving

At the discovery conference, the parties agreed to close Mr. Irving's deposition. Plaintiffs' counsel stated that she intends to supplement Mr. Irving's testimony with an affidavit. Plaintiff Irving will produce any such affidavit within thirty (30) days of this Ruling. In light of the parties' agreement, defendants' motion to compel the deposition of Mr. Irving is **DENIED AS MOOT**.

### III. Motion for Sanctions

Defendants also seek the imposition of sanctions pursuant to Rule 26(g) and Rules 37(a)(5), (b)(2)(A), (b)(2)(C), (d)(1), and (d)(3). At the conclusion of all proceedings in this case, on application, the Court will consider whether attorney's fees should be awarded and if so, in what amount. Accordingly, the Court **DENIES** defendant's motion for sanctions **without prejudice to renewal** on conclusion of this case with respect to defendants' request for the imposition of reasonable costs and fees.

Defendants seek additional sanctions in the form of an order: (1) prohibiting plaintiffs from introducing any material they have not yet produced in opposition to any motion for summary judgment or in support of any claims pursued at trial;

(2) dismissing plaintiffs' claims for compensatory damages; (3) entering a ruling that plaintiffs have failed to mitigate their damages; and/or (4) entering a default judgment on plaintiffs' remaining claims. The Court **DENIES** the relief requested on the current record, **without prejudice to re-filing**. For example, the relief sought by the first order is better reserved for a future motion in limine and/or motion to strike. As to the other relief sought, these are matters that are better dealt with in evidentiary rulings taken in connection with a motion for summary judgment or at trial. Therefore, on the current record, the Court likewise declines to enter the remaining requested relief.

**VI.    Conclusion**

Therefore, for the reasons stated, defendants' motion to compel is **GRANTED IN PART AND DENIED IN PART**. The Court **DENIES** defendant's motion for sanctions **without prejudice to re-filing**.

This is not a Recommended Ruling. This is a discovery ruling or order which is reviewable pursuant to the "clearly erroneous" statutory standard of review. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. Civ. R. 72.2. As such, it is an order of the Court unless reversed or modified by the district judge upon motion timely made.

ENTERED at Bridgeport, this 3rd day of June 2014.

_____/s/_____
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE