## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

KIM HANNAH, THOMAS IRVING, and     :
MICHAEL BARHAM,     :     CIVIL ACTION NO.
    Plaintiffs,     :     3:12-cv-01361 (VAB)
v.     :
WAL-MART STORES, INC. and     :
WAL-MART STORES EAST, L.P.,     :     FEBRUARY 11, 2016
    Defendants     :

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
## AND MOTION TO SEVER

Kim Hannah, Thomas Irving, and Michael Barham (collectively "Plaintiffs") sued

Wal-Mart Stores East, LP, and its parent, Wal-Mart Stores, Inc. (collectively "Wal-Mart"),

claiming that Wal-Mart unlawfully discriminated against them on the basis of race, and retaliated

against them, when it terminated their employment and did not rehire them.  Wal-Mart moves for

summary judgment as to all claims.  Wal-Mart also moves to sever Barham's claims from

Hannah's and Irving's.  For the following reasons, the motion for summary judgment is

GRANTED IN PART AND DENIED IN PART, and the motion to sever is DENIED.  Plaintiffs'

retaliatory failure to rehire claims and Barham's discriminatory termination and discriminatory

failure to rehire claims are the only remaining claims.

I.     **FACTS**[1]

      A.     **Wal-Mart's Organization**

---

[1] The facts set forth herein are undisputed unless otherwise indicated.  The Court deemed admitted all properly-supported allegations in Wal-Mart's Local Rule 56(a)1 Statement that were not denied in Plaintiffs' Local Rule 56(a)2 Statement with specific citations to competent record evidence that actually controverts the allegations. *See* D. Conn. L. Civ. R. 56(a).  Only evidence to which Plaintiffs specifically cited with respect to an assertion in Wal-Mart's Local Rule 56(a)1 Statement was considered in determining whether Plaintiffs raised a genuine dispute as to that assertion.  *See* D. Conn. L. Civ. R. 56(a)3; *Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) ("Fed.R.Civ.P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute."); *Ryder v. Wash. Mut. Bank, F.A.*, 501 F. Supp. 2d 311, 314 (D. Conn. 2007) (court not required to "dig through a voluminous record, searching for material issues of fact without the aid of the parties") (internal quotation marks and citations omitted).  Finally, Hannah's declaration is not signed.  ECF No. 230-6 at 21.  To avoid the exercise of requiring Plaintiffs to resubmit this document with a signature, further delaying this matter, the Court considered it, to the extent competent.

Wal-Mart is a retailer with stores across the country.  Wal-Mart stores are organized into geographical Markets.  Markets are organized into geographical Regions.  Regions are organized into geographical Divisions.  Local Rule 56(a) Stmts. ¶ 3.  At each level (Market, Regional, Divisional), managers have responsibility for particular disciplines, such as Human Resources and Asset Protection.  *Id.* ¶ 4.  A Market Manager has operational responsibility for stores within his or her Market.  A Market Human Resources Manager ("MHRM") provides human resources services within his or her Market.  A Market Asset Protection Manager ("MAPM") provides loss prevention services within his or her Market.  *Id.* ¶ 5.  MHRMs and MAPMs have "dotted line" reporting relationships with the Market Managers for the Markets they support, and direct reporting relationships with their respective Regional Human Resources Managers or Regional Asset Protection Managers.  *Id.* ¶ 6.  Regional Human Resources Managers and Regional Asset Protection Managers, in turn, have "dotted line" reporting relationships with the Regional Operations Managers they support, and direct reporting relationships with their respective Divisional Human Resources Managers and Divisional Asset Protection Managers.[2]  *Id.*

### B.      Plaintiffs' Employment at Wal-Mart

Kim Hannah is an African-American female.  Wal-Mart hired her on June 25, 2002.  In 2007, Wal-Mart promoted her to a MAPM position in New York.  In 2008, she became a MHRM.  In 2009, she transferred to a MHRM position in Connecticut.  The Market Manager for the Connecticut Market she supported was Alan Nasson.  *Id.* ¶ 7.

---

[2] The parties dispute whether certain positions were titled "manager" or "director" or "senior vice president."  *See* Local Rule 56(a) Stmts. ¶¶ 6, 15-17.  These are not material disputes.  *See Howard v. Gleason Corp.*, 901 F.2d 1154, 1159 (2d Cir. 1990) ("[S]ummary judgment cannot be avoided by immaterial factual disputes.").  For clarity, the Court uses "Manager."

Thomas Irving, Jr. is an African-American male.[3]  Wal-Mart hired him on April 15, 2006 as a MHRM in Connecticut.  The Market Manager for the Connecticut Market he supported was Brian West.  *Id.* ¶ 8.

As MHRMs, Hannah and Irving were responsible for assisting Store Managers with staffing, discipline, and other Human Resources issues.  Hannah and Irving reported to Regional Human Resources Manager Baldomero Silva III, who in turn reported to Divisional Human Resources Manager Phil Morris.  *Id.* ¶ 9.

Michael Barham is an African-American male.  Wal-Mart hired him on October 12, 2000.  In 2004, Wal-Mart promoted him to a Loss Prevention position with Sam's Club.  In 2006, Wal-Mart promoted him to a MAPM position for Wal-Mart in Connecticut.  For part of Barham's tenure as a MAPM, the Market Manager for the Connecticut Market he supported was Kim Golembewski.  *Id.* ¶ 10.  As a MAPM, Barham was responsible for assisting Store Managers with loss prevention issues.  In late 2009 and early 2010, Barham reported to Regional Asset Protection Manager Brian Broadus, who in turn reported to Divisional Asset Protection Manager Anthony Restuccia.  *Id.* ¶ 11.

### C.    Project Apple

#### 1.    Overview

In 2009 and 2010, Wal-Mart undertook a nationwide reorganization known within Wal-Mart as "Project Apple."  *Id.* ¶ 12.  Only certain individuals within the Wal-Mart organization were recruited to perform discreet functions of Project Apple.  Project Apple was not announced to the field until the end of January 2010.  *Id.* ¶ 13.

In connection with Project Apple, Wal-Mart changed its geographical and management structures.  *Id.* ¶ 14.  Project Apple eliminated all Market level Grocery, Electronics, and Fashion

---

[3] At oral argument, Plaintiffs' counsel informed the Court that Mr. Irving is now deceased.

Merchandiser positions.  *Id.* ¶ 20.  It also altered the roles and composition of the Market level management team.  *Id.* ¶ 19.  The number of stores that Market Managers supervised dropped from approximately 18 to approximately 10, and Market Managers' duties and responsibilities changed.  *Id.* ¶ 21.  New job descriptions were created for MHRMs and MAPMs, and some MHRMs and MAPMS changed from one-to-one working relationships with Market Managers to shared services arrangements whereby they supported multiple Market Managers.  *Id.* ¶ 22. Project Apple also involved a reduction in force.  *Id.* ¶ 23.

### 2.      Selection Process

Trent Burner, Wal-Mart's Senior Director of Global Organization Effectiveness, led the Project Apple team tasked with developing and implementing the process used to determine which incumbents would be selected for post-reorganization positions.  *Id.* ¶ 24.

The first phase of that selection process was performing job analyses of positions that would be impacted.  *Id.* ¶ 25.  The initial step of the job analyses involved developing and administering surveys for each post-reorganization position.  Separate surveys were done for Operations, Human Resources, and Asset Protection positions at the Divisional, Regional, and Market levels.  The objective of the surveys was to catalogue the Competencies, Knowledge, Skills, and Abilities ("KSAs"), and Work Activities and Behaviors ("WABs") for each post-reorganization position.  *Id.* ¶ 26.  The surveys were completed by Wal-Mart employees considered to be subject matter experts in the relevant disciplines.  Plaintiffs' direct supervisors had no role in completing the surveys.  *Id.* ¶ 27.

The next step in the job analysis phase was developing new job descriptions for each post-reorganization position.  Based on the Competency, KSA, and WAB information gathered in the survey process, new job descriptions were developed for Operations, Human Resources,

and Asset Protection positions at the Divisional, Regional, and Market levels.  *Id.* ¶ 28.[4]  The new job descriptions were completed by members of Trent Burner's Project Apple team in conjunction with Wal-Mart subject matter experts.  Plaintiffs' direct supervisors had no role in developing the new job descriptions.  *Id.* ¶ 29.

The second phase of the selection process was developing a method to determine which incumbents would be placed in post-reorganization positions.  *Id.* ¶ 30.  For this portion of the process, the new job descriptions were compared to the prior corresponding job descriptions and incumbents' prior annual performance evaluations.  *Id.* ¶ 31.  Incumbents' prior annual evaluations were prepared in the ordinary course by their supervisors during the first quarter of 2009.  *Id.* ¶ 13, 34.

Competencies and essential functions from the previous job descriptions and performance evaluations were "mapped" to competencies and essential functions in the new job descriptions.  The mapped competencies and essential functions for the new positions were then calibrated and weighted.  *Id.* ¶ 31.  The calibrated and weighted competencies were then reviewed by subject matter experts for each discipline involved.  Plaintiffs' direct supervisors supplied Plaintiffs' 2009 performance evaluations, but had no role in this review.  *Id.* ¶ 32.

Project Apple did not utilize every competency from the 2009 performance evaluations, gave some competencies more weight than others, and gave some competencies more or less

---

[4] The evidence to which Plaintiffs cited when denying this assertion does not controvert the assertion that Wal-Mart revised the job descriptions.  *See* Local Rule 56(a) Statements ¶ 28.  Hannah asserts in her unsigned declaration that the MAPM and MHRM positions were "not re-defined[,]" Hannah Decl. ¶ 21, but she played no role in Project Apple and therefore lacks personal knowledge.  *See Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997) ("[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment.").  Brian Broadus testified that he did not recall any change in the MAPM job description.  Broadus Dep. at 202:9-17.  First, his testimony is not that the MAPM and MHRM job descriptions were not revised, but rather that he did not recall any changes.  *See id.*  Second, Brian Broadus was not involved in Project Apple.  Broadus Dep. at 53:3-4 ("I wasn't involved in Project Apple"); *see also id.* at 205:23-206:8.  Wal-Mart submitted MAPM and MHRM job descriptions published on November 4, 2009 and January 25, 2010, respectively, which "supersede[d] all prior descriptions[,]" Defs.' Exs. 10 and 11.  Wal-Mart also submitted a document outlining the phases of the selection process, which included "creat[ing] a job description for each position[,]" Defs.' Ex. 9 at WLMT00592, and reviewing "[t]he previous and new job descriptions[,]" *id.* at WLMT00620.

weight than they had received in 2009 performance evaluations. *See id.* ¶¶ 35-39. Competencies from incumbents' annual evaluations were scored based on the weighted competencies for the new job descriptions. The weighted score for each competency was then tallied and the incumbent was assigned a total score. *Id.* ¶ 40. Total scores were compared to "cut scores," which determined what "band" an incumbent fell in. The highest scoring band was green, the middle scoring band was yellow, and the lowest scoring band was red. *Id.* ¶ 41. Green-banded incumbents were to be placed first, yellow-banded incumbents were to be placed second, and red-banded incumbents were expected to be displaced. *Id.* ¶ 42. Apart from completing Plaintiffs' 2009 performance evaluations, Plaintiffs' direct supervisors had no role in the banding process. *Id.* ¶ 44.

Hannah and Irving, who were MHRMs, were red-banded. Two other African-American MHRMs[5] were yellow-banded. *Id.* ¶ 46.

Barham, who was a MAPM, was red-banded. Two other MAPMs in Connecticut were red-banded. Both were white. Another African-American MAPM was not banded because he was too new. *Id.* ¶ 47.

In addition to their banding results, incumbents were considered on the basis of their geographical locations in an effort to minimize the need for relocation. *Id.* ¶ 48. Green- and yellow-banded incumbents within 50 miles of the post-reorganization Market office were given preference. If there was no green- or yellow-banded incumbent within 50 miles, then unplaced green- and yellow-banded incumbents within 200 miles or within the state of the post-reorganization Market were given preference. If there were no green- or yellow-banded incumbents within 200 miles or within the state of the post-reorganization market office, then the

---

[5] One was Connecticut-based, and the other supported stores in Connecticut and New York.

position remained open and was posted for applicants following the reorganization.  *Id.* ¶ 49.

Plaintiffs' direct supervisors had no role in the geographical placement process.  *Id.* ¶ 54.

After the banding and geographical placement processes, Divisional level incumbents were informed of their placement, if any.  Then Regional level incumbents were informed of their placement, if any.  *Id.* ¶ 55.  Divisional and Regional Managers then received lists of incumbents within their operational disciplines who were placed in Market-level positions or identified for displacement.  *Id.* ¶ 56.  Divisional and Regional Managers had an opportunity to seek "exceptions" for incumbents identified for displacement within their disciplines.  *Id.* ¶ 57.

A Divisional or Regional Manager seeking an "exception" had to present facts to explain why he or she believed that the process had generated an improper displacement for a particular incumbent.  *Id.*  Those facts were reviewed by Legal, and the Human Resources representative and Project Apple team member assigned to the relevant operational discipline.  *Id.*  The Human Resources Divisional and Regional Managers did not seek any exceptions for MHRMs selected for displacement.  *Id.* ¶ 60.  The Asset Protection Divisional and Regional Managers did seek an exception.  *Id.* ¶¶ 60-61.  Specifically, Divisional Asset Protection Manager Anthony Restuccia sought an exception for Laurie Canales, a Connecticut-based MAPM who is white.  *Id.* ¶¶ 61, 47.

Prior to seeking an exception for Laurie Canales, Restuccia had promoted Barham, who is black, to a MAPM position, had promoted Brian Broadus, who is black, to Regional Asset Protection Manager, and had promoted Anthony Williams, who is black, to Regional Asset Protection Manager.  *Id.* ¶ 63; Restuccia Dep. at 186:8-10.

### 3.    Execution

At the end of January 2010, Wal-Mart executed the reorganization and notified Associates how they were impacted.  Local Rule 56(a) Stmts. ¶¶ 64, 66.

Wal-Mart gave displaced incumbents the opportunity to accept severance in exchange for settlement agreements and releases.  *Id.* ¶ 68.  Displaced incumbents that did not accept severance remained on payroll and were allowed to apply as internal candidates for open positions until April 10, 2010.  *Id.* ¶ 69.  Red-banded incumbents generally were not considered for their former positions.  *Id.*  Displaced incumbents that did not secure alternative employment by April 10, 2010 were terminated, and their terminations were coded "lack of work" and "rehire eligible."  Wal-Mart terminated Hannah, Irving, and Barham on the same day in April 2010.  *Id.* ¶ 70.  Market Manager Brian West and MAPM Thomas Burns were terminated on the same day as Plaintiffs.  *Id.* ¶ 71.  Both are white.  *Id.*

### 4.    Termination and Rehiring of Stan Golembewski

Wal-Mart placed Stan Golembewski in a MAPM position in Connecticut between the time that the reorganization was announced at the end of January 2010, and the final date of employment for displaced Associates, April 10, 2010.  *Id.* ¶ 87.  Stan Golembewski had previously held one of the Market Grocery Merchandiser positions eliminated by Project Apple.  He was married to Kim Golembewski, a Market Manager that was promoted to a Regional Operations Manager position during Project Apple.  *Id.* ¶ 88.  Wal-Mart sometimes makes arrangements to employ an incumbent's "trailing spouse."[6]  *Id.* ¶ 89.  Stan Golembewski was considered Kim Golembewski's "trailing spouse."  *Id.* ¶ 90.  Stan Golembewski was placed in a MAPM position covering a Market at the eastern end of Connecticut.  The position was posted on or about March 5, 2010, and he went through the application and interview process.  *Id.* ¶ 94.

---

[6] Denying this assertion in their Local Rule 56(a)2 Statement, Plaintiffs cited paragraph 70 of Hannah's unsigned declaration, where she states that, to her knowledge, there was no written policy regarding "trailing spouses." Hannah Decl. ¶ 70.  But the evidence that Wal-Mart relies on for this assertion does not suggest that the policy was written.  *See* Thomas Aff. ¶¶ 9-10.  The remainder of the evidence to which Plaintiffs cite with regard to this assertion is either wholly non-responsive or does not actually controvert the assertion.

### D.        Plaintiffs' Efforts to Find Employment at Wal-Mart[7]

Hannah applied to twenty-two positions,[8] including MHRM positions, after learning that

she would be displaced.  *Id.* ¶ 96.  Wal-Mart filled only fifteen of the positions to which Hannah

applied.[9]  *Id.*  Eight were filled by white candidates, five were filled by black candidates, one

was filled by a Hispanic candidate whose race is disputed, and one was filled by a candidate who

did not disclose his or her race.  *Id.* ¶ 97.

Irving applied to four MHRM positions after learning he would be displaced.  Wal-Mart

filled only three of those positions.  *Id.* ¶ 99.  One was filled by a black candidate and two were

filled by white candidates.  *Id.* ¶ 100.

---

[7] Claims that Hannah and Barham asserted in a separate action were consolidated into this action in June 2015. *Hannah v. Wal-Mart Stores, Inc.*, No. 3:14-cv-01808 (JCH), 2015 WL 3771699, at *6 (D. Conn. June 17, 2015). Those claims were based on allegations regarding failures to rehire that allegedly took place after the filing of the original complaint in this case.  After the consolidation, the parties did not submit any additional evidence regarding Plaintiffs' efforts to seek employment after the filing of the original complaint in this case, although discovery had been conducted into those efforts.

[8] Plaintiffs claim that they applied to more positions than Wal-Mart identifies, but do not identify those alleged positions with any specificity.  As a result, they have failed to raise a genuine dispute that they applied to positions in addition to those identified by Wal-Mart.  *See Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir. 1998) (plaintiff must identify specific positions from which she was rejected); *Gaffney v. Dep't of Info. Tech. and Telecomm.*, 536 F. Supp. 2d 445, 459–60 (S.D.N.Y. 2008) ("[C]ourts generally require that the plaintiff establish that she applied for the specific position but did not receive an offer.").  Moreover, even if the Court accepted that Plaintiffs applied to some unspecified number of unspecified additional positions, Plaintiffs offer no evidence that those alleged positions were filled by persons outside of their protected class.  *Cf. Morris v. Ales Grp. USA, Inc.*, No. 04 CV 8239 (PAC) (THK), 2007 WL 1893729, at *9 (S.D.N.Y. June 29, 2007) ("In sum, [plaintiff] has not alleged a *prima facie* claim for failure to hire because she has presented no evidence that she actually applied for these positions, or that these positions were filled by people not in her protected class . . . .").

[9] Plaintiffs deny that Wal-Mart did not fill the positions that Wal-Mart contends it did not fill.  *See, e.g.*, Local Rule 56(a) Statements ¶¶ 96, 99, 102.  In support of their denial, Plaintiffs cite Hannah's unsigned declaration, where she contends that "the other positions were not, as claimed, never filled.  When Walmart learned that one of the plaintiffs was applying for a posted position at Walmart, they often manipulated the requisition postings, playing musical chairs with the requisition and removed the requisition from posting, and then filled the job on the sly/side." Hannah Decl. ¶ 82.  Plaintiffs do not support this theory with concrete particulars, and Hannah's conclusory allegation does not create a genuine dispute.  *See Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 451 (2d Cir. 1999) ("[t]o satisfy Rule 56(e), affidavits must be based upon 'concrete particulars,' not conclusory allegations.") (quoting *Schwapp v. Town of Avon*, 118 F.3d 106, 111 (2d Cir. 1997)); *cf. Girma v. Skidmore Coll.*, 180 F. Supp. 2d 326, 343 (N.D.N.Y. 2001) ("[M]ere surmise and speculation that something insidious occurred . . . does not carry Plaintiff's burden to show that a genuine question of material fact exists.").  Plaintiffs also cite the declaration of Sergio Mendez Williams, who has never met Plaintiffs, and who worked at Wal-Mart for a total of 23 days in March 2014, several years after Plaintiffs were terminated.  *See* Williams Decl. ¶¶ 2-3.  To the extent that any of Mr. Williams's statements are competent, they do not supply evidence as to whether the particular positions to which Plaintiffs applied were filled or not.

Barham applied to fourteen positions, including MAPM positions, after learning that he

would be displaced.  Wal-Mart filled only five of the positions to which Barham applied.  Three

were filled by white candidates and two were filled by Hispanic candidates whose races are not

reflected in the record.  *Id.* ¶ 102.  In May 2011, Wal-Mart hired Barham as a co-manager, and

he remains employed at Wal-Mart.  *Id.* ¶ 103.

### E.    Additional Evidence

Plaintiffs' Local Rule 56(a)2 Statement does not comply with Local Rule 56(a)2 because

it does not contain, "in a separate section titled 'Disputed Issues of Material Fact[,]' a list of each

issue of material fact as to which it is contended there is a genuine issue to be tried."  D. Conn.

L. Civ. R. 56(a)2.  As a result, in determining whether Plaintiffs raised a genuine dispute of

material fact, the Court considered only evidence to which Plaintiffs specifically cited in

connection with legal arguments set forth in their memorandum opposing Wal-Mart's motion for

summary judgment.[10]  *See Amnesty Am.*, 288 F.3d at 470-71 ("Fed.R.Civ.P. 56 does not impose

an obligation on a district court to perform an independent review of the record to find proof of a

factual dispute."); *Campbell v. Daytop Vill., Inc.*, 201 F.3d 430, 1999 WL 1295343, at *2 (2d

Cir. 1999) (as a result of plaintiff's failure to submit "'a separate, short and concise statement of

the material facts as to which it is contented there exists a genuine issue to be tried'" as required

by local rule, "the district court could have accepted as true defendant's statement of undisputed

facts," but nonetheless "ma[de] several references to [plaintiff]'s version of the facts").

## II.    STANDARD OF REVIEW

The Court shall grant summary judgment if there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The

---

[10] Over ten months after Plaintiffs' memorandum was due, Plaintiffs filed an amended memorandum (ECF No. 250) to correct incomplete record citations that were scattered throughout their timely-filed memorandum.  The Court rejects the amended memorandum as untimely and did not consider it.

movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has carried that initial burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). If no reasonable jury could find in favor of the opposing party because "the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

A fact is "material" if it might affect the outcome of the case under substantive law, and a dispute is "genuine" if the evidence would permit a reasonable jury to return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *Dalberth v. Xerox Corp.*, 766 F.3d 172, 182 (2d Cir. 2014).

Summary judgment may be appropriate "even in the fact-intensive context of discrimination cases." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001). However, "summary judgment is ordinarily inappropriate where an individual's intent and state of mind are implicated." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985). Thus, "[a] trial court must be cautious about granting summary judgment to an employer when . . . its intent is at issue," and "affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Gallo*, 22 F.3d at 1224 (citations omitted). But "the mere incantation of intent and state of mind" does not "operate as a talisman to defeat an otherwise valid motion." *Meiri*, 759 F.2d at 998.

## III.   DISCUSSION

Plaintiffs claim that Wal-Mart discriminated against them on the basis of race and retaliated against them, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), when it terminated their employment and did not rehire them.

### A.    Race Discrimination

Title VII prohibits an employer from discriminating on the basis of race.  42 U.S.C. § 2000e-2(a)(1).  Employment discrimination claims under Title VII are subject to the three-step burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

To overcome a motion for summary judgment under the *McDonnell Douglas* framework, "[t]he plaintiff . . . must first establish, by a preponderance of the evidence, a prima facie case of . . . discrimination."  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993) (internal quotation marks omitted).  Establishment of the prima facie case creates a presumption that the employer unlawfully discriminated against the employee, thus placing upon the defendant "the burden of producing an explanation to rebut the prima facie case—*i.e.*, the burden of producing evidence that the adverse employment actions were taken for a legitimate, nondiscriminatory reason."  *Id.* at 506-07 (internal quotation marks and citation omitted).

"If the defendant makes such a showing, the burden shifts back to the plaintiff to prove discrimination, for example, by showing that the employer's proffered reason is pretextual." *Demoret v. Zegarelli*, 451 F.3d 140, 151 (2d Cir. 2006).  "[A]lthough the presumption of discrimination drops out of the picture once the defendant meets its burden of production, the trier of fact may still consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is

pretextual." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (internal quotation marks and citations omitted).

Finally, although the evidentiary burden shifts back and forth, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Hicks*, 509 U.S. at 518.

### 1.   Prima Facie Cases

#### a.   Termination

"A plaintiff who was discharged pursuant to a [reduction in force] must prove the following to establish a prima facie case of disparate treatment: (1) she belongs to a protected class, (2) she was performing satisfactorily, (3) she was discharged, and (4) the decision to discharge occurred under circumstances giving rise to an inference of discrimination based on her membership in the protected class." *Duncan v. N.Y.C. Transit Auth.*, 45 F. App'x 14, 15-16 (2d Cir. 2002) (citing *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994)). "[T]he showing the plaintiff must make as to the elements of the prima facie case in order to defeat a motion for summary judgment is *de minimus*." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203-04 (2d Cir. 1995) (internal quotation marks omitted).

Wal-Mart concedes the first three elements of Plaintiffs' prima facie cases as to their discriminatory termination claims. Defs.' Mem. at 25. But Wal-Mart maintains that Plaintiffs have not satisfied the fourth element because the evidence does not give rise to an inference of discrimination. *Id.* The Court disagrees.

"A plaintiff who claims unlawful discrimination in the termination of employment may prevail notwithstanding the fact that his or her job was eliminated as part of a corporate reorganization or reduction in workforce, for even during a legitimate reorganization or

workforce reduction, an employer may not dismiss employees for unlawful discriminatory reasons." *Cronin*, 46 F.3d at 204 (internal quotation marks and citations omitted). "[I]n a reduction-in-force case or a structural reorganization case, a discharged employee who seeks under *McDonnell Douglas* to establish a prima facie case, need not show that he was replaced by a [person outside his protected class]; it is sufficient that the discharge occur in circumstances giving rise to an inference of . . . discrimination." *Montana v. First Fed. Sav. & Loan Ass'n of Rochester*, 869 F.2d 100, 105 (2d Cir. 1989).

The Second Circuit has recognized that a plaintiff claiming discrimination in the context of a reduction in force may raise a prima facie inference of discrimination by presenting evidence that the employer "continu[ed], after discharging the plaintiff, to seek applicants from persons of the plaintiff's qualifications to fill that position[.]" *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009); *accord Chambers*, 43 F.3d at 38 (plaintiff raised prima facie inference of race discrimination where, *inter alia*, employer solicited applicants having qualifications similar to plaintiff's to fill shop technician slot other than the shop technician slot that plaintiff vacated). Here, after terminating Hannah and Irving as MHRMs and Barham as a MAPM, Wal-Mart sought applicants from persons of Plaintiffs' qualifications to fill MHRM and MAPM positions. *See* Local Rule 56(a) Statements ¶¶ 96, 99, 102.

Furthermore, the Second Circuit has held that plaintiffs raised prima facie inferences of discrimination where, following a reduction in force, the employer hired candidates outside of a plaintiff's protected class, transferred a plaintiff's responsibilities to persons outside of the plaintiff's protected class, and/or failed to hire or consider a plaintiff for vacant positions. *See Montana*, 869 F.2d at 105 (prima facie inference of age discrimination raised where, in corporate reorganization and reduction in force, the majority of plaintiff's responsibilities were transferred

to two younger employees and plaintiff was not offered the position of either); *Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716-17 (2d Cir. 1994) (plaintiff raised prima facie inference of age discrimination where, *inter alia*, employer filled vacancy with younger employee at about the same time it decided to implement reduction in force, and, within one year after plaintiff's discharge, hired new employee to fill position similar to plaintiff's former position); *Leibowitz*, 584 F.3d at 502-03 (prima facie inference of sex and age discrimination raised where female plaintiff presented evidence that her former employer laid off five other employees, all of whom were females over the age of fifty, employer reassigned plaintiff's former teaching duties to at least three male instructors, and employer did not consider plaintiff for vacant positions); *Campbell*, 201 F.3d 430, 1999 WL 1295343, at *2 (African-American plaintiff raised prima facie inference of race discrimination where, within one week after terminating all employees supporting defunded program, employer rehired white member of that program and failed to provide plaintiff alternative position at a comparable salary, employer assigned some of plaintiff's former duties to white employee, and supervisor allegedly made racist comments).

Similarly, in this case, there is evidence that Wal-Mart hired Stan Golembewski, a white male, as a MAPM in Connecticut soon after Wal-Mart identified Barham for displacement as a MAPM.  Local Rule 56(a) Stmts. ¶¶ 66-67, 70, 87.  Wal-Mart personnel also sought an exception for, and retained, Laurie Canales, a white MAPM who had been red-banded.  *Id.* ¶¶ 47, 61.  Moreover, Barham applied to fourteen positions, including MAPM positions, after learning that he was going to be displaced, but Wal-Mart did not place him in any of the five positions that Wal-Mart ultimately filled.  *Id.* ¶ 102.  Wal-Mart eventually did rehire Barham as a co-manager, and continues to employ him, *id.* ¶ 103, but the fact that a plaintiff was rehired by the employer alleged to have discriminated against that plaintiff does not necessarily defeat an

inference of discrimination, *see Quaratino v. Tiffany & Co.*, 71 F.3d 58, 61, 65 (2d Cir. 1995) (prima facie inference of discrimination raised by plaintiff who was terminated during corporate restructuring and reduction in force, but later rehired and held her position at the time of the court's decision).  Finally, Wal-Mart did not hire Hannah into the fifteen positions to which she applied and which Wal-Mart filled, *id.* ¶ 96, and Wal-Mart did not hire Irving into the three positions to which he applied and which Wal-Mart filled, *id.* ¶ 99.

The Court concludes that Plaintiffs have established prima facie cases as to their respective discriminatory termination claims.

### b.        Failure to Rehire

A plaintiff may raise an inference of race discrimination as to a failure to rehire "by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications."  *McDonnell Douglas Corp.*, 411 U.S. at 802; *accord Nader v. ABC Television, Inc.*, 150 F. App'x 54, 56 (2d Cir. 2005). "[T]his standard is not inflexible, as '[t]he facts necessarily will vary in Title VII cases, and the specification of the above prima facie proof required from respondent is not necessarily applicable in every respect in differing factual situations."  *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253-54 n.6. (1981).

### i.        Hannah and Irving

Wal-Mart argues that Plaintiffs have not established an inference of discrimination as to their failure to rehire claims because some of the positions to which Plaintiffs applied were filled by blacks and Hispanics.  Wal-Mart cites no cases in support of this argument.  *See* Defs.' Mem.

at 25-26.  Plaintiffs argue that they have raised an inference of discrimination at least as to those

positions that were filled by whites, even though some other positions were filled by blacks and

Hispanics.  Plaintiffs cite no cases that support this argument.  *See* Pls.' Mem. at 6, 8, 9-10.

The Second Circuit recently reiterated, in a different context, that "a plaintiff cannot urge

an inference of discriminatory purpose from his treatment less favorable than most members of

his own protected class[.]"  *Turkmen v. Hasty*, 789 F.3d 218, 297 (2d Cir. 2015).  The court

noted that that conclusion is "so obvious that we generally pronounce it summarily[,]" and cited

the "countless" district court opinions to the same effect.  *Id.* at 297-98.  Indeed, the Second

Circuit has affirmed district courts' conclusions that no inference of discrimination was raised

where an employer hired or promoted persons belonging to the plaintiff's protected class.[11]  *E.g.*,

*Baez v. New York*, No. 14-3984, 2015 WL 6642971, at *2 (2d Cir. Nov. 2, 2015) (no prima facie

inference of discriminatory failure to promote where employer promoted six employees, five of

whom belonged to plaintiff's protected class); *Best v. Miller*, 173 F.3d 843, 1999 WL 147050, at

*1 (2d Cir. 1999) (affirming district court's conclusion that no reasonable jury could infer

discrimination where black plaintiff applied to 26 positions, 24 of which were filled by blacks

and two of which were filled by Hispanics).

Likewise, district courts in this Circuit have found no inference of discrimination where

employers hired or promoted candidates belonging to a plaintiff's protected class.  *E.g.*, *Rowe v.

Bell Atl.*, No. 02-CV-0756 (DRH) (JO), 2006 WL 297710, at *3-4 (E.D.N.Y. Feb. 7, 2006) (no

prima facie inference of discriminatory failure to rehire where, of the eight individuals rehired,

"four of the individuals were, like Plaintiff, African-American females"); *Cabrera v. NYC*, 436

---

[11] The Court is aware of the Second Circuit's caution that, in determining whether a plaintiff raised an inference of discrimination as to a discharge claim, "the appropriate inquiry should be whether the employer continued to seek applicants to fill the position."  *Meiri*, 759 F.2d at 996.  But *Meiri* did not involve a failure to hire claim, and the court recognized that "the inference of discrimination [may be] far more powerful in employee discharge cases than it is in the context of failures to hire or to promote."  *Id.* at 997.

F. Supp. 2d 635, 645 (S.D.N.Y. 2006) (no prima facie inference of discriminatory failure to rehire where, of the seven employees selected to fill vacant positions, two were of plaintiff's national origin); *Smith v. Planas*, 975 F. Supp. 303, 308 (S.D.N.Y. 1997) (no prima facie inference of discriminatory failure to promote where "[f]ive of the seven individuals identified by Plaintiff as having received higher-paying assignments were black—members of Plaintiff's protected class."); *Samuels v. New York State Dep't of Corr. Servs.*, No. 94 CIV. 8645 (SAS), 1997 WL 253209, at *5 (S.D.N.Y. May 14, 1997) ("Two of the four promotions of which [plaintiff] complains were, in fact, promotions of black males—members of the protected class of which plaintiff is a member.  As such, plaintiff has failed to make out a prima facie case of race discrimination . . . ."); *Bailey-Lynch v. Potter*, No. 03-CV-0145E(F), 2005 WL 1241900, at *5 (W.D.N.Y. May 25, 2005) (no prima facie inference of discriminatory failure to rehire where ten employees were recommended for rehire, "five of whom were in plaintiff's age group, six of whom were female and four of whom were black.  In fact, two of the ten employees were of the same status as plaintiff - *viz.*, black females over the age of 40.").

In this case, persons belonging to Hannah and Irving's protected class were hired into some of the positions to which Hannah and Irving applied.  Hannah applied to fifteen jobs that were filled by eight whites, five blacks, one Hispanic whose race is disputed, and one candidate who did not disclose his or her race.  Local Rule 56(a) Statements ¶ 96.  Irving applied to three jobs that were filled by two whites and one black.  *Id.* ¶ 100.

The *Rowe* court observed, and this Court agrees, that "[t]he mere fact that other members of a protected class were not discriminated against does not bar a discrimination claim, *per se*." *Rowe*, 2006 WL 297710, at *3 (citing *Brown v. Henderson*, 257 F.3d 246, 256 (2d Cir. 2001) ("[T]here is no per se bar to maintaining a claim of sex discrimination where a person of another

sex has been similarly treated.")).  "That being said, it does pose a significant hurdle."  *Rowe*,

2006 WL 297710, at *3.  The *Rowe* court went on to note that the plaintiff "could have overcome

this hurdle had she provided evidence to support her discrimination claim," but failed to do so

because she offered only her "personal belief that she was more qualified than two of the white

rehires[.]"  *Id.* at *4.

Similarly, in this case, the Court concludes that the inference of discrimination is

weakened by the fact that blacks were hired into some of the positions to which Hannah and

Irving applied, and Hannah and Irving have not offered other evidence that gives rise to an

inference of discrimination.  Hannah and Irving perhaps could have raised inferences of

discrimination if they submitted evidence that they were more qualified than the successful

applicants, or that the successful applicants lacked requisite qualifications.  But Plaintiffs do not

direct the Court to evidence of the successful applicants' qualifications, and Plaintiffs'

"subjective opinion about whose qualifications are superior is not dispositive," *Campbell*, 201

F.3d 430, 1999 WL 1295343, at *3; *accord EEOC v. Trans World Airlines, Inc.*, 544 F. Supp.

1187, 1219 (S.D.N.Y. 1982) ("[W]ith respect to proof of the claimant's qualifications either to

fill the position sought, to continue in his present position, or to assume another position at the

time of a reduction-in-force, the testimony of the employee himself carries little weight."); *see*

*also Varughese v. Mount Sinai Med. Ctr.*, Civ. 8812 (CM) (JCF), 2015 WL 1499618, at *41

(S.D.N.Y. Mar. 27, 2015) ("It is impossible to draw an inference of discrimination in a failure to

promote claim where the available evidence provides no foundation for comparison between the

plaintiff and the person promoted.").

Hannah and Irving argue, in support of their respective prima facie cases, that Wal-Mart

manipulated job postings in order to discriminate against them on the basis of their race.  *See*

Pls.' Mem. at 8, 9, 10.  In support of this argument, Plaintiffs cite conclusory allegations in Hannah's unsigned declaration, which lack concrete particulars regarding particular postings to which Plaintiffs allegedly applied and that Wal-Mart allegedly manipulated.  *Id.* at 8, 10; *see Bickerstaff*, 196 F.3d at 451 ("[T]o satisfy Rule 56(e), affidavits must be based upon 'concrete particulars,' not conclusory allegations.") (quoting *Schwapp*, 118 F.3d at 111).  They cite the declaration of Sergio Mendez Williams, who has never met Plaintiffs, who worked at Wal-Mart for a total of 23 days in March 2014, several years after Plaintiffs were terminated, who offers conclusory allegations of a general practice of playing "musical chairs" with job postings, and offers no competent testimony evidencing that particular postings to which Plaintiffs applied were manipulated because of their race.  Pls.' Mem. at 8, 9, 10.  They cite portions of Brian Broadus's deposition testimony which do not offer any evidence that postings to which Hannah and Irving applied were manipulated, much less because of their race.  *Id.* at 8.  They cite Barham's testimony regarding an MAPM position to which Hannah and Irving did not apply.  *Id.* at 10.

Hannah and Irving have not raised an inference of discrimination as to their respective discriminatory failure to rehire claims, and the Court therefore grants Wal-Mart's motion for summary judgment as to those claims.

### ii.      Barham

Barham has raised an inference of discrimination.  First, he is African-American and therefore a member of a protected class.  Second, he has carried his *de minimus* burden to show that he, as a former MAPM marked "eligible for rehire," was qualified for the jobs to which he applied.  Third, Wal-Mart rejected him.  Fourth, Wal-Mart filled three of the positions to which he applied with a white and two Hispanics whose races are not reflected in the record.  *See*

*McDonnell Douglas Corp.*, 411 U.S. at 802.  Wal-Mart has not shown that any of the candidates who filled the positions to which Barham applied were members of his protected class.  *See Johnson v. Conn.*, 798 F. Supp. 2d 379, 387 (D. Conn. 2011) ("[T]he fact that Defendant hired candidates from other underrepresented groups does not eliminate the possibility that there was bias against Plaintiff's protected class.  A jury could find that Defendant looks more favorably upon Hispanic applicants than African Americans.").  The fact that Wal-Mart later rehired Barham and currently employs him as a co-manager does not necessarily defeat the inference of discrimination.  *See Quaratino*, 71 F.3d at 61, 65 (prima facie inference of discrimination raised by plaintiff who was terminated during corporate restructuring and reduction in force, but later rehired and held her position at the time of the court's decision).

**2.     Legitimate, Nondiscriminatory Reason**

At the second step of the *McDonnell Douglas* inquiry, the burden shifts to Wal-Mart to articulate a legitimate, nondiscriminatory reason for the adverse employment actions suffered by Plaintiffs.  *See Hicks*, 509 U.S. at 506-07.

With respect to Plaintiffs' terminations, Wal-Mart has met this burden.  Wal-Mart carried out a nationwide reorganization and reduction in force that resulted in the termination of some MHRMs and MAPMs, including Plaintiffs.  Local Rule 56(a) Stmts. ¶¶ 60-61, 70, 71; Defs.' Ex. 20.  *Cronin*, 46 F.3d at 202 ("It is well established that a reduction in work force is a legitimate, non-discriminatory reason for terminating an employee.").

Wal-Mart's "reasons" for not rehiring Plaintiffs are (1) Plaintiffs competed against many applicants for the positions that they sought, Defs.' Mem. at 29; and (2) Wal-Mart did not

consider race when filling those positions, and the racial profile of the successful candidates is diverse, *id.* at 30.[12]  Neither is a reason for not rehiring Plaintiffs.

First, the fact that multiple candidates applied to a position is not a reason why a particular candidate was selected over another.  Wal-Mart's assertion that many candidates applied for the positions that Plaintiffs sought does not explain why Wal-Mart chose other candidates over Plaintiffs.  In its reply memorandum, Wal-Mart asserted that "the recruiters and managers involved with the selection process found other candidates to be more qualified," but does not cite evidence showing that recruiters and managers determined that the successful candidates were more qualified than Plaintiffs for the relevant positions.  *See* Reply at 13.  The Court reviewed all pages of Anthony Durden's deposition transcript to which Wal-Mart cited on page 13 of its reply memorandum, and the closest Mr. Durden comes to discussing a reason for selecting one candidate over another is when he speculates that somebody other than himself selected Heather Haberer, a non-party to this action, for a position instead of other candidates because "[u]sually the person selected is the most qualified and did the best in terms of the interview."  Durden Dep. at 217.  This testimony is speculative and does not offer a reason why Wal-Mart chose other candidates over Plaintiffs for the particular positions at issue.

In its memorandum in support of its motion for summary judgment, Wal-Mart stated that its reason for not rehiring Plaintiffs was that "Plaintiffs competed against hundreds of internal and external candidates for the positions they sought" and cited paragraphs 96 through 105 of its Local Rule 56(a) Statement.  Defs.' Mem. at 29-30.  The Court reviewed the evidence to which Wal-Mart cited in those paragraphs, much of which is Anthony Durden's deposition testimony, and found no evidence as to why Wal-Mart chose the successful candidates over Plaintiffs.  *See Burdine*, 450 U.S. at 254 ("The burden that shifts to the defendant . . . is to rebut the presumption

---

[12] Wal-Mart offered a third "reason" that is relevant only to Plaintiffs' retaliation claims, discussed *infra*.

of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. . . . To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection."); *Meiri*, 759 F.2d at 997 ("[T]he employer's explanation of its reasons must be clear and specific.").

The Court recognizes that "the employer has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria," *Komoroski v. Dep't of Consumer Prot., Conn.*, 300 F. App'x 59, 60 (2d Cir. 2008), and "respect[s] the employer's unfettered discretion to choose among qualified candidates[,]" *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001). But Wal-Mart directs the Court to no record evidence that the successful candidates were more qualified than, or even equally as qualified as, Plaintiffs. Wal-Mart has discretion that it may exercise lawfully. Instead of articulating how it exercised that discretion, however, Wal-Mart has merely shown that it had to exercise its discretion because of the number of applicants. *See Bary v. Delta Airlines, Inc.*, Civil Action No. CV-02-5202 (DGT), 2009 WL 3260499, at *10 (E.D.N.Y. Oct. 9, 2009) (airline "fail[ed] to articulate a legitimate non-discriminatory reason" for not allowing Muslim Arab plaintiff to carry bag onto airplane where "[t]he only explanation provided . . . was 'that Delta has the discretion to restrict or limit a passenger's carry-on luggage.' Delta may very well have such discretion, but defendant offered no legitimate non-discriminatory explanation for why it exercised that discretion to restrict plaintiff's carry-on privilege while not preventing other passengers from carrying on their bags."), *aff'd*, 553 F. App'x 51 (2d Cir. 2014).

Second, Wal-Mart's assertions that race was not considered in filling the positions, and that the racial profile of the successful candidates is diverse, are not reasons why Wal-Mart chose

23

other candidates over Plaintiffs.  Essentially, Wal-Mart has stated that whatever reason it had for rejecting Plaintiffs was nondiscriminatory, but has not stated what that reason was.  *Cf. Meiri*, 759 F.2d at 997 ("Were vague or conclusory averments of good faith sufficient to satisfy the employer's burden, Title VII employees seeking to demonstrate pretext would be unfairly handicapped.").

Because Wal-Mart has failed to proffer a legitimate, nondiscriminatory reason, the Court must deny Wal-Mart's motion for summary judgment with respect to Barham's surviving claim of discriminatory failure to rehire.

### 3.    Pretext

Because Wal-Mart successfully articulated a legitimate, non-discriminatory reason for terminating Plaintiffs, the burden shifts to Plaintiffs to raise a genuine dispute as to whether "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."  *Hicks*, 509 U.S. at 515.  Plaintiffs need not "prove that the reorganization as a whole was pretextual."  *Cronin*, 46 F.3d at 204.  They need only demonstrate that a genuine dispute exists as to whether, "despite the employer's ostensible rationale and overall operations, intentional discrimination is the persuasive explanation for the plaintiff's treatment."  *Id.*; *accord Campbell*, 201 F.3d 430, 1999 WL 1295343, at *2 ("In the context of a [reduction in force], plaintiff can show pretext and discrimination by demonstrating that she was somehow singled out or treated differently on the basis of a protected factor.").  Moreover, Plaintiffs need not show that Wal-Mart's proffered reason was false, but only that it was not the only reason and that race was a motivating factor.  *Montana*, 869 F.2d at 105; *Cronin*, 46 F.3d at 203 ("[T]he plaintiff is not required to show that the employer's proffered reasons were false or played no

role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the 'motivating' factors.").

Plaintiffs offer no direct evidence of discriminatory bias, but instead rely on circumstantial evidence to show that the reduction in force was pretext for terminating them because of their race.

Plaintiffs argue that the reduction in force is "clearly pretextual" because Hannah was the "highest-ranked" MHRM in Connecticut, Barham was the "highest-ranked" MAPM in Connecticut, and Irving was told that he was not being terminated because of his performance. Pls.' Mem. at 11. In support of this argument, Plaintiffs cite Barham's testimony that he was the highest rated and most qualified MAPM in Connecticut in 2009, Barham Dep. at 269, 295, Brian Broadus's testimony that Hannah received the highest evaluation for Connecticut-based MHRMs in 2009, Broadus Dep. at 101, 107-08, and Irving's testimony that Phil Morris told him that he was not being terminated because of his job performance, Irving Dep. at 396-97.[13]

But the disparity between Plaintiffs' 2009 performance evaluations and their red-banding is not probative of discrimination. Plaintiffs have not raised a genuine dispute as to the competency weighting, mapping, and scoring process employed in Project Apple. When Wal-Mart mapped competencies to the post-reorganization job descriptions, it did not utilize every competency from the 2009 performance evaluations, gave some competencies more

---

[13] Plaintiffs also cite paragraphs 295 and 296 of Hannah's unsigned declaration, which do not exist. Pls.' Mem. at 11. They cite Irving's testimony that he believes that the restructure was pretextual. *Id.*; *cf. Gregory v. Daly*, 243 F.3d 687, 692 (2d Cir. 2001) (a plaintiff's conclusory allegation that the defendant's conduct violated the ultimate legal standard does not suffice). Plaintiffs mischaracterize a memorandum from Wal-Mart Chief Executive Officer Bill Simon, arguing that it states that "none of the terminations in the alleged restructure had anything to do with performance." Pls.' Mem. at 11. In fact, the memorandum states only that the elimination of the Market level Merchandiser position was not related to job performance. *See* Defs.' Ex. 22 at 1. Plaintiffs cite portions of Hannah's deposition where she agreed with the questioning attorney's characterizations of a white employee's termination and her coaching as "pretextual," "discriminatory," "retaliatory," and "Kafkaesque." *See* Pls.' Mem. at 11; *cf. Gregory*, 243 F.3d at 692. Plaintiffs argue that "defendants' own management witnesses admitted that there really was no 2010 restructure in Connecticut for MAPM and MHRM jobs[,]" but the evidence to which Plaintiffs cite simply does not support that argument. *See* Pls.' Mem. at 11.

weight than others, and gave some competencies significantly more or less weight than they had

received in 2009 performance evaluations.  *See id.* ¶¶ 35-39.  As a result, competencies that

earned incumbents strong evaluations in 2009 may have received significantly less or no weight

when mapped to the post-reorganization job descriptions.

Wal-Mart identified relevant competencies for post-reorganization positions, assigned

different weights to those competencies, calculated incumbents' total scores based on the

weighted scores they received in those competencies, and those total scores resulted in

incumbents' banding.  Plaintiffs have not come forward with any competent evidence that their

banding, which identified them for displacement,[14] was the result of anything other than the

adding up of their weighted competency scores.  Moreover, Plaintiffs' 2009 evaluations, which

provided the competency scores used to band Plaintiffs, were prepared in the first quarter of

2009, before the supervisors who prepared those evaluations had learned about the upcoming

reduction in force.  *See* Local Rule 56(a) Statements ¶ 34.  *See Viola*, 42 F.3d at 717-19 (in age

---

[14] Throughout their Local Rule 56(a)2 Statement, Plaintiffs claim that the "alleged banding exercise was not created for MAPMs and MHRMs until after plaintiffs were already terminated and brought this lawsuit, in order to provide a pretextual, *post hoc* justification for the illegal discrimination." *E.g.*, Pls.' 56(a)2 Stmt. ¶ 37.  In support of this theory, Plaintiffs cite paragraph 29 of Hannah's unsigned declaration, which contains the conclusory statement quoted in the preceding sentence.  Hannah Decl. ¶ 29.  They also cite Plaintiff Irving's testimony that he "believe[s]" that his banding score was a "post-hoc rating that was created after the fact to justify what was done to [him.]"  Irving Dep. at 374; *see Gregory*, 243 F.3d at 692.  Plaintiffs cite the testimony of Brian Broadus, who admits that he "wasn't involved in Project Apple," Broadus Dep. at 53, did not understand what red-banding meant, *id.* at 52-53, 197, and did not know what criteria was used in the banding process, *id.* at 106, 197.  Plaintiffs also contend that stamps on summary documents reflecting the banding of Connecticut-based MHRMs and MAPMs support their theory.  The stamps read: "7.24.2013" and "PRIVILEGED – PREPARED AT THE REQUEST OF COUNSEL – DO NOT FORWARD."  Defs.' Exs. 12 and 13.  The documents also bear Bates stamps.  *Id.*  The fact that these documents indicate that they were prepared at the request of counsel during the discovery period in this case does not raise a genuine dispute as to whether Plaintiffs were red-banded before they were notified of their terminations.  Finally, at oral argument, Plaintiffs' counsel represented to this Court that, at first, Barham was banded green and Hannah was banded yellow, but Wal-Mart later changed their bandings to red.  In support of this contention, Plaintiffs' counsel directed the Court to testimony of Brian Broadus, who, again, was not involved in, and did not know the criteria used in, the banding process.  Broadus Dep. at 52-53, 106.  Brian Broadus testified that a deposition exhibit indicated that, among certain MHRMs, Hannah was "ranked" the "best" and Irving was "ranked" the "third highest."  Broadus Dep. at 55.  First, Broadus offers no testimony about whether he had ever seen the document before, what the document represents, when it was prepared, or by whom.  Second, Brian Broadus's testimony is not that Plaintiffs were banded green or yellow before they were banded red.  Third, this purported "ranking" document was not submitted to the Court.

discrimination case involving company-wide reorganization and reduction in force, plaintiff did not raise genuine dispute as to pretext where, *inter alia*, plaintiff's termination was mandated by prescribed guidelines for broad-based reduction in force, his evaluator was unaware of upcoming reduction in force at time of annual performance evaluation, transfer of younger employee to fill vacancy occurred before anyone knew which positions would be eliminated, younger employee was favored under the prescribed guidelines, and the fact that employer expanded and hired new employee eleven months after plaintiff's termination did not "cast any doubt on the economic necessity of the original termination decision"); *Pidek v. Xerox Corp.*, 104 F.3d 350, 1996 WL 537210, at *2 (2d Cir. 1996) (in age discrimination case involving company-wide reduction in force, plaintiff did not raise genuine dispute as to pretext where, *inter alia*, plaintiff's unit employed a neutral "Performance Service Matrix" to determine who would be selected for termination, plaintiff was placed in "Cell 4," and other protected employees in "Cell 4" were terminated); *Duncan*, 45 F. App'x at 16 (plaintiff failed to demonstrate that her reduction in force rating was pretext).

Hannah's argument that she was replaced by three white women – Laurie Canales, Lise Gramolini, and Tori Mutz – does not demonstrate pretext. *See* Pls.' Mem. at 7.  She cites only Laurie Canales's deposition testimony in support of this argument. *Id.*  First, Laurie Canales was a MAPM, and therefore did not replace Hannah, who was a MHRM.[15]  Second, according to Laurie Canales's testimony, on which Hannah relies, Hannah was responsible for Market 137 before the reorganization.  Canales Dep. at 23:17-18.  After the reorganization, Market 137 became Market 155.  *Id.* at 25:23.  Lise Gramolini took over Markets 161 and 162 after the reorganization, not Market 155.  *Id.* at 27:25-28:2.  Finally, Laurie Canales testified only that

---

[15] Canales became an MHRM in early 2014, approximately four years after Hannah was terminated.  *See* Canales Dep. at 60:3-5.

Tori Mutz was a MHRM in 2009 but that she could not remember which Market Tori Mutz handled.  *Id.* at 22.

Irving makes the same argument, relying only on Laurie Canales's testimony.  Pls.' Mem. at 9.  It fails for the same reasons.  Canales testified that Irving handled Market 15 before the reorganization, Canales Dep. at 23:19-20, and that Market 15 became Market 163 after the reorganization, *id.* at 25:15-21.  The cited portions of Laurie Canales's testimony do not demonstrate that Irving's MHRM responsibilities in Market 163 were assumed by Laurie Canales, Lise Gramolini, or Tori Mutz after the reorganization.  *See* Pls.' Mem. at 9.

Hannah and Irving's pretext claim is further undermined by the fact that two other African-American MHRMs servicing Connecticut and New York were yellow-banded and retained.  Local Rule 56(a) Statements ¶ 46; Defs.' Ex. 12.  *See Adeniji v. Admin. for Children Servs., N.Y.C.*, 43 F. Supp. 2d 407, 426 n.7 (S.D.N.Y. 1999) (collecting cases where plaintiffs failed to show disparate treatment where they were treated less favorably than members of their own protected classes).

The Court concludes that both Hannah and Irving have failed to raise a genuine dispute as to whether "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination," *Hicks*, 509 U.S. at 515, and therefore grants Wal-Mart's motion for summary judgment as to their discriminatory termination claims.

Barham has raised a genuine dispute as to pretext.

First, Wal-Mart hired Stan Golembewski, a white man, as a MAPM for Barham's Market very shortly after notifying Barham that he would be displaced.  *See, e.g., Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 136 (2d Cir. 2000) (genuine dispute as to pretext existed where, *inter alia*, younger employee was hired to fill plaintiff's position shortly after reduction in force).

Wal-Mart contends that Golembewski cannot be used as a comparator because he is not similarly situated to Barham because he was a "trailing spouse."  "Whether two employees are similarly situated ordinarily presents a question of fact for the jury."  *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000).  A genuine dispute exists as to whether Golembewski and Barham were similarly situated in all material respects.  Golembewski was terminated in the same reduction in force as Barham and, like Barham, sought reemployment after his termination.  Wal-Mart has offered little evidence about its "trailing spouse" policy, leaving questions as to whether a "trailing spouse" is "subject to the same workplace standards[,]" *id.* at 40, for example, whether Wal-Mart always hires a "trailing spouse" over another candidate, regardless of qualifications or other factors.  Given these questions and the minimal evidence regarding Wal-Mart's "trailing spouse" policy, the Court cannot conclude as a matter of law that Golembewski and Barham were not similarly situated.

Second, Anthony Restuccia pursued an exception for Laurie Canales, a white MAPM in Connecticut, despite the fact that she was red-banded and received a lower weighted average score than Barham.  Defs.' Ex. 20.  Restuccia testified that he sought that exception because he considered Canales a high performer.  *See generally* Restuccia Dep. at 173-83.  But a reasonable jury could discredit that explanation in light of Restuccia's admission that he did not compare Canales's and Barham's performance before seeking the exception.  *Id.* at 176-77.  The fact that Restuccia promoted Barham earlier in his career does not entitle Wal-Mart to a same actor inference, and is not fatal to Barham's pretext claim, because Restuccia did not make the decision to terminate Barham.  Restuccia Dep. at 50-51.  *Cf. Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 560 (2d Cir. 1997) ("[W]hen the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to her an invidious motivation").

Third, Wal-Mart did not place Barham in vacant positions to which he applied following the reduction in force, and there is a question as to whether all five positions to which he applied, and which Wal-Mart filled, were filled with persons outside of his protected class.

The fact that a white Connecticut-based MAPM, Thomas Burns, was also red-banded and terminated cuts against a finding of pretext, as does the fact that Wal-Mart rehired Barham in May 2011 and employs him to this day.[16]  But, viewing the above-discussed evidence in the light most favorable to Barham, and drawing all reasonable inferences in his favor, the Court concludes that Barham has raised a genuine dispute as to whether his race was a motivating factor in his termination.  Accordingly, Wal-Mart's motion for summary judgment is denied as to Barham's claim for discriminatory termination.

**B.      Retaliation**

Plaintiffs claim retaliatory discharge and retaliatory failure to rehire.  Title VII prohibits an employer from discriminating against an employee because he has opposed an employment practice prohibited by Title VII.  42 U.S.C. § 2000e-3(a).  Title VII retaliation claims are subject to the three-step *McDonnell Douglas* burden-shifting framework.  *Terry v. Ashcroft*, 336 F.3d 128, 141 (2d Cir. 2003).

**1.      Retaliatory Termination**

For purposes of Plaintiffs' retaliatory termination claims, the Court will assume *arguendo* that Plaintiffs established their respective prima facie cases.  Wal-Mart has articulated a legitimate, nondiscriminatory reason for terminating Plaintiffs: the reduction in force.  Therefore, "the burden shifts back to [Plaintiffs] to demonstrate that the proffered reason is pretext for retaliation and that, more generally, [Plaintiffs'] protected activity was a but-for cause of the

---

[16] Barham testified that he did not apply to his current New York position through Wal-Mart's electronic hiring system, where he had found no success, but that he "g[ot] in through the back door" by submitting a paper application and asking a friend to help him get an interview.  Barham Dep. at 180-81, 300-01.

alleged adverse action by the employer." *Sanderson v. N.Y. State Elec. & Gas Corp.*, 560 F. App'x 88, 93-94 (2d Cir. 2014) (internal quotation marks and citations omitted); *accord Univ. of Tex. SW Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013) (Title VII retaliation claims "must be proved according to traditional principles of but-for causation").  Plaintiffs have failed to do so.

While general corporate awareness is sufficient to establish a corporate defendant's awareness of protected activity for purposes of a prima facie case, *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000), lack of awareness of protected activity on the part of the decision-makers responsible for the adverse action counters a plaintiff's circumstantial evidence of causal connection at the third stage of the *McDonnell Douglas* inquiry, *id.* at 117. As noted *supra*, Plaintiffs have not raised a genuine dispute that their red-banding identified them for termination, and that their red-banding was the result of totaling their weighted competency scores and comparing the totals to "cut scores."  Plaintiffs offer no evidence that the individuals who conducted the banding were aware of their alleged protected activity.  Nor did they offer evidence that those individuals were "acting explicitly or implicit upon the orders of a superior who has the requisite knowledge." *Id.*

Despite Plaintiffs' failure to list separately in their Local Rule 56(a)2 Statement allegedly disputed material facts, the Court, in an abundance of caution, turned to Plaintiffs' memorandum in considering evidence in support of their retaliatory termination claims.  Plaintiffs' memorandum fails to point out to the Court the approximate dates of Plaintiffs' alleged protected activity, and approximately how many days, weeks, or months after the alleged protected activity Wal-Mart terminated Plaintiffs.  The Court will not establish this timeline for Plaintiffs. *See Monahan v. N.Y.C. Dep't of Corrs.*, 214 F.3d 275, 292 (2d Cir. 2000) ("While the trial court has discretion to conduct an assiduous review of the record in an effort to weigh the propriety of

granting a summary judgment motion, it is not required to consider what the parties fail to point out.") (internal quotation marks and citation omitted).  In any event, temporal proximity alone cannot establish pretext as to a retaliation claim.  *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010).  Therefore, even if Plaintiffs had identified with any particularity the temporal relationship between their alleged protected activity and their terminations, additional evidence is required.

The additional evidence to which Plaintiffs direct the Court in their memorandum does not raise a genuine dispute as to whether retaliation was a but-for cause of their respective terminations.  As to Hannah's showing of pretext, Plaintiffs' memorandum briefly states "Hannah can meet all three prongs of her retaliatory termination claim" and refers to prior pages. Pls.' Mem. at 17.  Evidence cited in those prior pages does not raise a genuine dispute as to pretext as to her retaliatory termination claim.  *See* Pls.' Mem. at 14, 15 (citing, *e.g.*, Hannah Dep. at 367-68 (testifying that, "based on the way [she] know[s] things work at Wal-Mart," bringing a discrimination lawsuit "would be the end of the opportunity for a person . . . to get a job"); *id.* at 326-27 (answering "Yes" to a series of questions about a mark on her evaluation that assume ultimate issue, including "Do you have direct and unmistakable evidence that you were retaliated against . . . ?" and "Was that direct evidence that Phil Morris approved of and allowed retaliation against you . . . ?"); *id.* at 331 (offering hearsay that Phil Morris allegedly told Hannah "that he was actually marking [her] down and hurting [her] evaluation because [she] did [her] job and did investigations and supported complaints of discrimination against people who targets of those complaints . . . .")).

As to Irving's showing of pretext, Plaintiffs' memorandum directs the Court to Irving's testimony that he "believe[s]" that Regional Human Resources Manager Baldomera Silva

"tainted or attempted to taint the process for [him] at the last quarter of 2009 in part because of retaliation against [him] for having complained about" Silva giving him a lower rating in 2008. Irving Dep. at 372.  Not only is Irving's belief not probative of retaliation in connection with his termination, there is no evidence that Baldomera Silva played any role in the banding that identified Irving for termination.  Plaintiffs' memorandum also cites Barham's testimony that it is "[a]bsolutely" his belief that "Tom Irving and Kim Hannah were eliminate[d] not as part of a restructure but because of retaliatory and discriminatory animus[.]"  Barham Dep. at 270.  This testimony is not probative of retaliation.

As to Barham's showing of pretext on his retaliatory termination claim, Plaintiffs' memorandum cites to Barham's testimony that he "believe[s]" that he was retaliated against after making complaints about not being rehired *after* he was identified for termination.  *See* Pls.' Mem. at 17.  This testimony is not probative of retaliatory termination.

Plaintiffs have not raised a genuine dispute that retaliation was a but-for cause of their respective terminations, and therefore the Court must grant Wal-Mart's motion for summary judgment as to Plaintiffs' retaliatory termination claims.

### 2.     Retaliatory Failure to Rehire

To make out a prima facie case of retaliation under Title VII, a plaintiff must show (1) participation in a protected activity; (2) the defendant was aware of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.  *Terry*, 336 F.3d at 141.

### a.     Protected Activity

As to their respective retaliatory failure to rehire claims, Plaintiffs have carried their *de minimus* prima facie burdens to show that they engaged in protected activity.

Hannah testified that she made, or supported in her Human Resources role, a number of complaints of discriminatory treatment. *See* Local Rule 56(a) Statements ¶¶ 73, 75; Hannah Dep. at 138-39.

Irving testified that he complained to Phil Morris that black employees were being discriminated against in connection with promotion opportunities, Irving Dep. at 362-63, that he complained to Hannah about pervasive race discrimination at Wal-Mart, *id.* at 366, and that he complained to Phil Morris about disparate treatment of African-American employees with respect to discipline and termination, *id.* at 367.

Barham testified that, after unsuccessfully applying for a position after his termination, which position was filled by a white candidate, he complained to Brian Broadus about discrimination. Barham Dep. at 297.

In addition, Plaintiffs filed a charge of discrimination against Wal-Mart with the Connecticut Commission on Human Rights and Opportunities ("CCHRO") and the Equal Employment Opportunity Commission ("EEOC") in August 2010.[17]  Ruling on Mot. Partial Judg. on the Pleadings at 2, ECF No. 79; Defs.' Mem. Supp. Mot. Partial Judg. on the Pleadings, Ex. 1, ECF No. 31-1.

### b.      Awareness of Protected Activity

Plaintiffs have carried their *de minimus* prima facie burdens to show that Wal-Mart had general corporate awareness of their protected activity. *See* Defs.' Mem. Supp. Mot. Partial Judg. on the Pleadings, Ex. 1 at 1, ECF No. 31-1; *Gordon*, 232 F.3d at 116; *Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033, 1039 (2d Cir. 1993) (corporate defendant was aware of plaintiff's EEOC complaint against it); *Bush v. Fordham Univ.*, 452 F. Supp. 2d 394, 416 (S.D.N.Y. 2006)

---

[17] Plaintiffs stated in their memorandum that they initiated legal proceedings against Wal-Mart "[i]n early 2010[.]" Pls.' Mem. at 14.  Plaintiffs cited no record evidence in support of that assertion.

("[Plaintiff] engaged in protected activity of which [defendant] was aware when she filed her EEOC charges and filed her lawsuit.").

Plaintiffs have raised a genuine dispute that their alleged complaints, including Irving's alleged complaints to Phil Morris, a Divisional Human Resources Manager, and to Hannah, a MHRM, as well as Barham's complaint to Brian Broadus, a Regional Asset Protection Manager, were sufficient to impute awareness to Wal-Mart. *See Torres v. Pisano*, 116 F.3d 625, 636 (2d Cir. 1997) ("[F]or the knowledge of a supervisor to be imputed to the company, that supervisor must be at a sufficiently high level in the hierarchy of the company that he or she qualifies as a proxy for the company.") (internal quotation marks and citation omitted).

### c.      Adverse Employment Actions

Plaintiffs have raised a genuine dispute that their failures to be rehired constituted adverse employment actions. *Kaluczky v. City of White Plains*, 57 F.3d 202, 208 (2d Cir. 1995).

### d.      Causal Connection

Temporal proximity alone may satisfy a party's *prima facie* burden to show a causal connection between protected activity and an adverse employment action. *El Sayed*, 627 F.3d at 933 ("The temporal proximity of events may give rise to an inference of retaliation for the purposes of establishing a prima facie case of retaliation under Title VII."); *Sanderson v. New York State Elec. & Gas Corp.*, 560 F. App'x 88, 94 (2d Cir. 2014) ("[T]emporal proximity alone may be sufficient to satisfy a retaliation plaintiff's prima facie burden . . . ."). Plaintiffs engaged in the above-identified protected activity, and filed their charge of discrimination with the CCHRO and EEOC in August 2010, and, in following months, Wal-Mart declined to rehire them for the positions to which they applied. *See* Local Rule 56(a) Statements ¶¶ 96, 99, 102; Defs.' Ex. 41-43. *See Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845 (2d Cir. 2013) ("[T]he but-

for causation standard [for a Title VII retaliation claim] does not alter the plaintiff's ability to

demonstrate causation at the prima facie stage on summary judgment . . . indirectly through

temporal proximity."); *Summa v. Hofstra Univ.*, 708 F.3d 115, 128 (2d Cir. 2013) (seven-month

gap between protected activity and adverse employment action was not prohibitively remote);

*Curcio v. Roosevelt Union Free Sch. Dist.*, No. 10-CV-5612 (SJF) (AKT), 2012 WL 3646935, at

*13 (E.D.N.Y. Aug. 22, 2012) ("When the facts of a particular case call for it, a flexible view of

the temporal proximity analysis may be warranted.") (internal quotation marks omitted).

Viewing the evidence in the light most favorable to Plaintiffs, considering the *de minimus* nature

of Plaintiffs' prima facie burdens, and considering Wal-Mart's failure, discussed *infra*, to

articulate a non-retaliatory reason for not rehiring Plaintiffs, the Court concludes that Plaintiffs

have made out prima facie cases as to their respective retaliatory failure to rehire claims.

### e.        Legitimate, Non-retaliatory Reason

As discussed *supra*, two of Wal-Mart's stated "reasons" for not rehiring Plaintiffs (many

candidates applied, and the successful candidates were diverse) are insufficient.  Wal-Mart

asserts a third "reason" specific to Plaintiffs' retaliation claims: "there is no evidence that

recruiters or hiring managers were aware of, let alone motivated, by [*sic*] Plaintiffs' alleged

protected activity in making hiring decisions."  Defs.' Mem. at 30.  Again, this is not a reason for

not rehiring Plaintiffs.  Wal-Mart has stated that whatever reason it had for rejecting Plaintiffs

was not retaliatory, but has not stated what that reason was.  As a result, the Court must deny

summary judgment as to Plaintiffs' retaliatory failure to rehire claims.

### C.        Motion to Sever

Wal-Mart moves to sever Barham's claims from Hannah's and Irving's.  Federal Rule of

Civil Procedure 21 provides that the Court may sever any claim against a party.  Fed. R. Civ. P.

21.  The decision whether to sever a claim is committed to the sound discretion of the trial court. *Costello v. Home Depot U.S.A., Inc.*, 888 F. Supp. 2d 258, 263 (D. Conn. 2012).  "Courts consider whether: (1) the claims arise out of the same transaction or occurrence; (2) the claims present some common question of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) prejudice would be avoided; and (5) different witnesses and documentary proof are required for the separate claims."  *Id.*

The motion to sever is DENIED.  Plaintiffs' claims generally arise out of the same transaction or occurrence: their termination on the same day in April 2010 pursuant to a reduction in force, and their subsequent efforts to regain employment.  The claims present common questions of law or fact, such as the Project Apple selection process, Wal-Mart's organizational structure, the job application process at Wal-Mart, and the legal standards for retaliation.  Judicial economy would be facilitated by not severing these claims and avoiding the cumulative presentation of evidence, potentially in two separate trials before two separate juries.  Some different witnesses and documentary proof may be required for Barham's claims as opposed to Hannah's and Irving's, but common witnesses will be required for the fact issues identified above, and concerns about jury confusion can be addressed with an instruction.  *See Zafiro v. United States*, 506 U.S. 534, 539 (1993) (even in criminal cases, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice"); *Duke v. Uniroyal Inc.*, 928 F.2d 1413, 1420-21 (4th Cir. 1991) (district court did not abuse discretion in denying motion to sever where plaintiffs were terminated on the same day in connection with the same reduction in force and court instructed jury to consider separately each discrimination claim and the evidence pertaining to it); *Lewis v. Triborough Bridge & Tunnel Auth.*, No. 97 CIV. 0607 (PKL), 2000 WL 423517, at *5 (S.D.N.Y. Apr. 19, 2000) (denying motion for separate trials in

discrimination and retaliation case because, *inter alia*, "any prejudice or confusion can be remedied by a carefully drafted jury instruction").

**IV.     CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment (ECF No. 205) is GRANTED IN PART AND DENIED IN PART and Defendants' Motion to Sever (ECF No. 180) is DENIED.  The only remaining claims are Plaintiffs' retaliatory failure to rehire claims, and Barham's discriminatory termination and discriminatory failure to rehire claims.

SO ORDERED at Bridgeport, Connecticut this eleventh day of February, 2016.

        /s/ Victor A. Bolden_____
       VICTOR A. BOLDEN
       UNITED STATES DISTRICT JUDGE