UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

KIM HANNAH, TOM IRVING,  :
MICHAEL BARHAM,  :
 :
                Plaintiffs,  :          Civil Action No.: 3:12-cv-01361 (VAB)
 :
        v.  :
 :
WAL-MART STORES, INC., and  :
WAL-MART STORES EAST, L.P.,  :          March 3, 2016
 :
                Defendants.  :
 :

MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR RECONSIDERATION

Pursuant to D. Conn. L. Civ. R. 7(c), Defendants Wal-Mart Stores East, L.P. and Wal-Mart Stores, Inc. (collectively "Wal-Mart" or "Defendants") move for reconsideration of the Court's February 11, 2016 ruling ("Ruling") granting in part and denying in part Wal-Mart's motion for summary judgment (Document no. 255). Defendants submit this memorandum of law in support of their motion.

I.    **INTRODUCTION**

The Court's ruling grants Defendants' motion for summary judgment of Hannah's and Irving's discriminatory termination, retaliatory termination, and discriminatory failure to rehire claims, and all 3 Plaintiffs' retaliatory termination claims. Ruling at pp. 20, 28, 33. The Ruling denies summary judgment on all three Plaintiffs' retaliatory failure to rehire claims, as well as Barham's discriminatory termination and discriminatory failure to rehire claims. Ruling at pp. 24, 30, 36.

Although the Ruling is thorough, the Court unfortunately overlooked critical, undisputed facts and misapplied controlling authority in the portions of the Ruling denying summary

judgment. For the reasons set forth herein, the Court should reconsider its Ruling and grant summary judgment on the balance of Plaintiffs' claims.

## II.    ARGUMENT

### A.    Legal Standard.

"A motion for reconsideration is committed to the sound discretion of the court." Kregos v. Latest Line, Inc., 951 F.Supp. 24, 26 (D.Conn.1996). The standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Jackson v. Post Univ., Inc., No. 3:08-CV-1810 (CSH), 2012 WL 1189075, at *4 (D. Conn. Apr. 9, 2012), quoting Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir.1995). See also Virgin Atl. Airways, Ltd. v. National Mediation Bd., 956 F.2d 1245,1255 (2d Cir.1992); U.S. ex rel. Smith v. Yale Univ., No. 3:02CV1205(PCD), 2006 WL 1168446, at *2 (D. Conn. Apr. 28, 2006)

Although courts do not lightly grant motions for reconsideration, judges in this District do grant such motions.  See, e.g., Oppedisano v. Southern Conn. State Univ., No. 3:07-CV-1693 (WWE), 2013 WL 5658244 (D. Conn.Oct.15, 2013) (reconsidering denial of motion to dismiss CFEPA claim, and granting that motion).  Because the Ruling overlooked controlling authority and uncontroverted facts that should alter the Court's decision, reconsideration is appropriate in this matter.

### B.    The Court overlooked Wal-Mart's legitimate, non-discriminatory explanation for not rehiring the Plaintiffs.

After concluding that all Plaintiffs had established a *prima facie* case of retaliation with respect to their efforts to become reemployed, and that Barham had established a *prima facie* case of discrimination with respect to his efforts to become reemployed, the burden of

2

production shifted to Wal-Mart to articulate a legitimate, nondiscriminatory reason for its actions. Timbie v. Eli Lilly & Co., 3:08CV00979 (PCD), 2010 WL 9067050 (D. Conn. July 24, 2010), aff'd, 429 F. App'x 20 (2d Cir. 2011) (citations omitted).  The employer's burden of production is "not a demanding one; [it] need only offer such an explanation for the employment decision." Bickerstaff v. Vassar College, 196 F.3d 435, 446 (2d Cir. 1999), cert. denied, 530 U.S. 1242 (2000) (citation omitted).

The Court concluded that the Defendants' failed to provide legitimate non-discriminatory explanations for the failures to rehire the Plaintiffs. Ruling at pp. 21-24, 36. In that connection, the Court found that Wal-Mart's explanations were that: (1) Plaintiffs competed against many applicants for the positions they sought; (2) Wal-Mart did not consider candidates race when filling those positions, and (3) recruiters and hiring managers were not aware of Plaintiffs' protected activity in making their decisions. Ruling at pp. 21, 36. This conclusion ignored Wal-Mart's explanation for its decisions and the evidence in support of those decisions.

Specifically, the Court failed to acknowledge Defendants' legitimate explanation that Plaintiffs were: **"amongst the dozens of internal and external applicants for those positions, the recruiters and managers involved with the selection process found other candidates to be more qualified."**[1] Reply Memo in Support of Summary Judgment at p. 13. Not only did the Court fail to recognize this explanation, it failed to consider the evidence supporting that conclusion and the controlling case law regarding such an explanation. Ruling at pp. 22-23.

First, it is undisputed that individuals that were red-banded and displaced during Project Apple were generally "not considered for their former positions." Ruling at p. 8. Thirteen of the 15 positions that Hannah applied for were either Market Human Resource Manager positions or

---

[1] The volume of candidates that the Plaintiffs competed against was a relevant consideration. The Supreme Court has expressly noted in connection with discrimination cases that: "Context matters." Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53 (2006).

higher level Regional Human Resources Director positions. Rule 56 Statement at ¶ 96. All three of the positions that Irving applied for were Market Human Resources Manager positions. Rule 56 Statement at ¶ 99. Two of the 5 positions Barham applied for were Market Asset Protection Manager positions. Rule 56 Statement at ¶ 102. Thus, Plaintiffs largely applied for positions for which they had previously been found to be inadequate performers. Having been red-banded in their old jobs, they were not attractive candidates when they reapplied for them.

Second, there was uncontroverted evidence that the candidates selected had comparable or superior credentials. Hannah made much of her education, but all 15 positions that Hannah applied for were filled by candidates with college degrees. Indeed, 10 had graduate degrees like her. Rule 56 Statement at ¶ 96. Moreover, 9 of the 15 of those selected were internal candidates with current experience at Wal-Mart; Hannah had not been with the company for months or years at the time she applied for the positions at issue. Id. The candidate selected for the Store Operations position Hannah applied for was an internal candidate with current experience and she has a graduate degree. Id. at ¶ 96(l). Irving also made much of his education, but 2 of the 3 three positions Irving applied for were filled by people with college degrees.[2] Rule 56 Statement at ¶ 99. All 3 of those selected were internal candidates with current experience at Wal-Mart, whereas Irving had been away from the company for more than a year. Id. One of the 2 candidates selected for the MAPM positions to which Barham applied was filled by a person with a graduate degree; Barham had no such degree.[3] Rule 56 Statement at ¶ 102. Both individuals selected for the MAPM positions were internal candidates with current experience at Wal-Mart. Id. With respect to the Store Operations positions that Barham applied for, there is no

---

[2] It is unknown whether or not the third candidate had a college degree because it was not reflected on her record. Rule 56Statement at ¶ 99(b).
[3] It is unknown whether or not the second candidate had a college degree because it was not reflected on his record. Rule 56Statement at ¶ 102(d).

record of the highest level of education held by the successful candidates. However, all three

successful candidates were internal candidates whose most recent positions had been in Store

Operations; in contrast, Barham had not held a Store Operations position since 2004. Defendants

Ex. 23 at p. WLMT003265-3267.[4]

      Indicating the candidate hired was considered to be better qualified than the plaintiff has

long been recognized as a legitimate, nondiscriminatory explanation for a hiring decision.

Houston v. Manheim–N.Y., 475 F. App'x 776, 779 (2d Cir. 2012) (upholding summary judgment

where Plaintiff failed to provide evidence "that demonstrated defendants' discriminatory intent or

rebutted their legitimate, nondiscriminatory reason for rejecting [plaintiff] for the position,

namely, that they hired a more qualified individual"); Scherer v. Williamsville Central School

Dist., 26 Fed.Appx. 30(2d Cir.2001); Digilov v. JPMorgan Chase Bank, N.A., No. 13 CIV. 975

(KPF), 2015 WL 685178, at *13 (S.D.N.Y. Feb. 18, 2015); Wetzel v. Town of Orangetown, No.

06 CIV. 6117 (LAP), 2015 WL 745703, at *5 (S.D.N.Y. Feb. 9, 2015); Moore v. Metro. Transp.

Auth., 999 F.Supp.2d 482, 495 (S.D.N.Y.2013); Idrees v. City of New York, No. 04 Civ.

2197(LAK)(GWG), 2009 WL 142107 (S.D.N.Y.  Jan. 21, 2009); Milano v. Astrue, No. 05 Civ.

6527(KMW)(DCF), 2008 WL 4410131 (S.D.N.Y. Sept. 26, 2008); Reed v. Connecticut, Dept. of

Transp., 161 F.Supp.2d 73 (D.Conn. 2001);  Owens v. Waldorf Astoria Corporation, No. 92

CIV. 4561(TPG), 1997 WL 251556  (S.D.N.Y. May 13,1997). A defendant needs only state, not

prove, the existence of a non-discriminatory reason for its employment decision. *Texas Dep't of*

*Cmty. Affairs v. Burdine*, 450 U.S. 248, 255-256 (1981). *See also Fisher v. Vassar College*, 114

F.3d 1332, 1337 (2d Cir. 1997), *cert. denied*, 552 U.S. 1075 (1998) (holding that the

presumption of discrimination disappears when the employer proffers a legitimate business

---

[4] Consistent with the fact that people displaced during Project Apple were generally not considered for their former positions, when Barham was rehired it not was as a MAPM, but as a store Co-Manager. Ruling at p. 8, 15.

reason for the action). Wal-Mart articulated its legitimate, non-discriminatory explanation for its hiring decisions and produced adequate evidence to support that explanation. In denying summary judgment, the Court failed to consider the explanation and supporting evidence, and failed to adhere to controlling case law on this point.

### C.   There is no evidence of pretext or evidence of a causal connection between Plaintiffs' protected activity and their failures to be rehired.

Having articulated its legitimate, non-retaliatory, non-discriminatory explanation, for the Plaintiffs' failures to be rehired, the burden shifted back to the Plaintiffs to bear their ultimate burden of proving that Wal-Mart's explanation was mere pretext and that the hiring decisions were actually motivated by discriminatory or retaliatory animus. The Court misapplied controlling precedent on this point.

The Court recognized that Defendants had discretion to select amongst qualified candidates. Ruling at p. 23. It also recognized that it was bound to "respect the employer's unfettered discretion to choose among qualified candidates." Id. quoting Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 103 (2d Cir.2001). "Only where an employer's business decision is so implausible as to call into question its genuineness should [a court] conclude that a reasonable trier of fact could find that it is pretextual." Diaz v. Conn. Light & Power Co., Civil No. 3:13–CV–775 (JCH), 2015 WL 540657, *6 (D. Conn. Feb. 9, 2015). The Court should not "second-guess Defendants' business decisions." Id. Notwithstanding its nod to Wal-Mart's discretion in choosing amongst qualified candidates, the Court failed to defer to Wal-Mart's candidate selections.

If the plaintiff "provide[s] no indication that any evidence exists that would permit the trier of fact to draw a reasonable inference of pretext," the court may properly grant summary judgment. Hoyt v. Dep't of Children & Families, 309 F. Supp. 2d 299, 307 (D. Conn. 2004)

6

(internal citation and quotation marks omitted). A plaintiff cannot establish pretext by "offering purely conclusory allegations of discrimination, absent any concrete particulars . . . ." Id. This, however, is all Plaintiffs' provided. Ruling at p. 19. The Court overlooked Plaintiffs' failure on this point and justified that conclusion by misapplying controlling precedent.

   *1. Plaintiffs' protected activity is too remote from the hiring decisions at issue to establish "but for" causation.*

   "The Supreme Court recently held that 'Title VII retaliation claims must be proved according to traditional principles of but-for causation,' which 'requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.' Ware v. Donahoe, No. 3:09CV00740 DJS, 2014 WL 840225, at *14 (D. Conn. Mar. 4, 2014) aff'd sub nom. Ware v. Brennan, 607 F. App'x 72 (2d Cir. 2015), quoting Kwan v. Andalex Grp., LLC, 737 F.3d 834, 845  (2d Cir. 2013) and University of Texas Southwestern Medical Center v. Nassar, 133 S.Ct. 2517, 2533 (2013)).

   The Court cited Kwan in support of its causation analysis. Ruling at p. 35-36. While Kwan articulates recent 2d Circuit reasoning on causation in retaliation cases, the facts of that case are readily distinguishable from this matter. 737 F.3d 834. Only three weeks passed between Kwan's protected activity and the challenged employment decision. 737 F.3d at 838. Also, the employer in Kwan is a "small family-owned" real estate management company with fewer than twenty-five employees. Kwan, LLC, 737 F.3d at 838. In contrast, Wal-Mart has over a million employees, the positions that the Plaintiffs' applied were not only in Connecticut, but also New York, New Jersey, Pennsylvania, North Carolina, South Carolina, Florida, and Ohio, and the employment decisions took place months or years after the Plaintiffs' protected activity. Defendants Ex. 21 at p. WLMT002599, 2600; Defendants Ex. 22 at WMLT003010, 3011; Defendants Ex. 23 at WMLT003333, 3339. Despite these crucial factual differences, the Court

reached the same conclusion as the 2d Circuit in <u>Kwan</u> that there was a causal connection between the Plaintiffs' protected activity and the challenged employment decisions. This was clear error.

A causal connection may be established through the temporal proximity between the protected activity and the adverse employment action. <u>Kwan</u>, 737 F.3d at 844 n. 4. Although there is no bright line, "[w]here, as here, a plaintiff relies exclusively on timing to [establish] causation, the temporal proximity between the protective activity and adverse employment action must be 'very close.' " <u>Vale v. Great Neck Water Pollution Control Dist.</u>, 80 F.Supp.3d 426, 441 (E.D.N.Y.2015), citing <u>Clark Cty. Sch. Dist. v. Breeden</u>, 532 U.S. 268, 273 (2001)); see also, <u>Manoharan v. Columbia University College of Physicians & Surgeons</u>, 842 F.2d 590, 593 (2d Cir.1988); <u>Henry v. N.Y.C. Health & Hosp. Corp.</u>, 18 F.Supp.3d 396, 412 (S.D.N.Y.2014). The temporal proximity in this case was not remotely close.

The most recent protected activity cited by the Court was Plaintiffs' filing of charges of discrimination with the EEOC and CHRO in August 2010. Ruling at p. 34. The Court then found that Wal-Mart declined to rehire them in "following months." Id. at p. 35. This conclusion ignores undisputed facts:

- The hiring decisions impacting Hannah took place between March 2011 through February 2014 -- 6 to 41 months after she filed her administrative charges. Defendants Ex. 21 at p. WLMT002600.

- The hiring decisions impacting Irving took place between January 2012 and June 2012 -- 17 to 22 months after he filed his administrative charges. Defendants Ex. 22 at WMLT003011.

- The hiring decisions impacting Barham took place between December 2010 and December 2013 – 4 to 40 months after he filed his administrative charges. Defendants Ex. 23 at WMLT003339.

Because every position at issue was not filled for *many months or years* after the Plaintiffs' protected activity, too much time passed between the Plaintiffs' protected activity and the hiring decisions at issue to draw an inference of causal connection. Murray v. Visiting Nurse Servs. of N.Y., 528 F.Supp.2d 257, 275 (S.D.N.Y.2007) ("[D]istrict courts within the Second Circuit have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation.") (collecting cases); Hollander v. American Cyanamid Co., 895 F.2d 80, 85-86 (2d Cir.1990) (holding that three-and-a-half-month lapse between protected activity and adverse action too large a temporal gap to create inference of causal connection); Chamberlin v. Principi, 247 Fed.Appx. 251, 253 (2d Cir. 2007) (five-month gap between protected activity and adverse job action was insufficient to establish causal connection required for retaliation claim).

The Court references Summa v. Hofstra University, 708 F.3d 115 (2d Cir. 2013), for the proposition that a seven month gap between the plaintiff's protected activity and the challenged employment decision was enough to find temporal proximity. Ruling at p. 36. Like Kwan, there are significant factual differences between Summa and this case. Crucially, "that (a) Summa had already been offered the position; (b) Miller–Suber, who was well aware of Summa's NYSDHR complaint, both suggested and encouraged Connolly to re-interview Summa when Connolly could simply have signed off on the form based on her staff's evaluation of Summa; and (c) Miller–Suber encouraged and affirmed Connolly's decision to rescind her offer." 708 F.3d at 130. There is no evidence of similar circumstances in this case. As such, providing an expansive

view of temporal proximity was not warranted. Instead, dismissal was warranted. Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 160 (2d Cir. 1999) (granting summary judgment on retaliation claim because plaintiff failed to establish causal connection between protected activity and alleged adverse action.); Oliphant v. Conn. DOT, No. 3:02cv700 (PCD), 2006 U.S. Dist. LEXIS 77021, at *31-32 (D. Conn. Oct. 20, 2006) ("The operative issue is not simply the length of time between the protected activity and the alleged retaliation but the **demonstrated nexus** between the two.")(emphasis added). Plaintiffs provide absolutely no evidence whatsoever to support such a causal connection. As a result, the Court should reconsider its Ruling and grant summary judgment of Plaintiffs' retaliatory failure to rehire claims.

      2.    *General corporate knowledge of Plaintiffs' protected activity is not enough to establish "but for" causation.*

The Court found that Hannah's and Irving's complaints to Morris and Barham's complaint to Broadus, and their EEOC and CHRO filings were sufficient to impute corporate awareness of protected activity to Wal-Mart. Ruling at p. 35. This is clearly not enough.

Plaintiffs cannot rely on general corporate knowledge alone to satisfy the "causal connection" prong. See Kwan, 737 F.3d at 844 n. 4 ("[The plaintiff] cannot satisfy the causation prong through mere corporate knowledge ...."); Weber v. City of New York, 973 F.Supp.2d 227, 268 n. 25 (E.D.N.Y.2013) (holding that the defendant's corporate knowledge satisfied the "knowledge" prong but was insufficient, without more, to satisfy the "causal connection" prong (citing Gordon v. N.Y.C. Bd. of Educ., 232 F.3d 111, 117 (2d Cir.2000))).

Contrary to the Court's conclusion, at the "but for" causation stage Plaintiffs needed to provide evidence that the hiring decision makers were aware of their protected activity. Gordon., 232 F.3d at 117 ("The lack of knowledge on the part of particular *individual agents* is admissible

as some evidence of a lack of a causal connection, countering plaintiff's circumstantial evidence of proximity ...."); E.E.O.C. v. Bloomberg L.P., 967 F.Supp.2d 816, 859 (S.D.N.Y. 2013) ("[T]he lack of evidence indicating knowledge of particular individual agents can doom a plaintiff's ability to show the fourth element (causation)." (citing Gordon, 232 F.3d at 117)). A plaintiff may, however, establish a causal connection by "counter[ing] with evidence that the decision-maker [who lacked knowledge] was acting on orders or encouragement of a superior who did have the requisite knowledge." Papelino v. Albany College of Pharmacy of Union University, 633 F.3d 81, 92 (2d Cir. 2011)(citing Henry v. Wyeth Pharm., Inc., 616 F.3d 134, 148 (2d Cir.2010), cert.denied 562 U.S. 1279 (2011), and Gordon, 232 F.3d at 117); see also Summa 708 F.3d , at 127("To the extent that decision maker knowledge is relevant in establishing causation, that knowledge may be satisfied by demonstrating that 'the agent who decides to impose the adverse action but is ignorant of the plaintiff's protected activity *acts pursuant to encouragement by a superior* (who has knowledge) to disfavor the plaintiff.'" (quoting Henry, 616 F.3d at 148)); see also Cooper v. Conn. Dep't of Corrs., No. 3:09CV691 (MRK), 2010 WL 4345715, *8 (D. Conn. Oct. 19, 2010) (although the Second Circuit has twice held general corporate knowledge sufficient, "in both of those cases, the Court indicated that the lower-level agent who actually carried out the adverse employment action may have acted pursuant to the encouragement of a superior who did have personal knowledge of the employee's protected activity"); Vuona v. Merrill Lynch & Co., 919 F. Supp. 2d 359, 383 (S.D.N.Y. 2013); McBride-Crawford v. Gen. Mills Cereals Operations, Inc., 12-CV-1180S, 2015 WL 4208608, *8 (W.D.N.Y. July 9, 2015).

In this case, Plaintiff's neither provided evidence that the hiring decision makers were aware of their protected activity nor evidence the hiring decision makers were encouraged in

their actions by people who had knowledge of the protected activity. In the absence of any evidence that people with actual knowledge of protected activity either made the hiring decisions at issue, or ordered or encouraged the challenged hiring decisions because of Plaintiffs' protected activity, there is no basis to find "but for" causation. As a result, the Court should reconsider its Ruling and grant summary judgment of Plaintiffs' retaliatory failure to rehire claims.

**D.      Barham's discriminatory discharge claim should be dismissed.**

The Court denied Defendants' motion to dismiss Barham's discriminatory discharge claim. Ruling at p. 30. The Court should also reconsider this portion of its Ruling.

Notwithstanding the fact that Thomas Burns, a Caucasian, red-banded Connecticut based MAPM, was also terminated as a result of Project Apple along with Barham, the Court drew an inference of race discrimination in connection with Barham's termination because two Caucasian employees were retained as MAPM's in Connecticut in the wake of Project Apple. Laurie Canales' retention despite being red-banded and the placement of Stan Golembewski in an MAPM position after his Market Grocery Merchandiser position was eliminated during Project Apple. These issues represent two separate, unrelated courses of conduct. The Court conflated the two issues and overlooked controlling authority and uncontroverted facts in its consideration of them.

1. *The retention of Laurie Canales does not support Barham's discriminatory termination claim.*

It is undisputed that Canales, Burns and Barham were all red-banded after the Project Apple ranking process was completed. Ruling at p. 6. The Court erred in its consideration of the exception sought for Canales.

The Court noted: "The fact that Restuccia promoted Barham earlier in his career does not entitle Wal-Mart to a same actor inference, and is not fatal to Barham's pretext claim, because

Restuccia did not make the decision to terminate Barham." Ruling at p. 29, citing Grady v. Affiliated Central, Inc., 130 F.3d 553, 560 (2d Cir. 1997), cert. denied, 525 U.S. 936 (1998). This conclusion overlooks a critical distinction: while Mr. Restuccia did not select Canales, Burns and Barham for termination, it was Restuccia's decision to pursue the exception process for Ms. Canales. Ruling at p. 7. This overlooked fact mandates a different conclusion.

There is no dispute that Restuccia promoted Barham to MAPM, as well as two other African Americans, Brian Broadus and Anthony Williams. Ruling at p. 7. As a result, no inference of discrimination should be drawn from Restuccia seeking an exception for Canales. See Grady, *supra*. See also, Ruling at p. 17 (citing numerous cases in support of conclusion that "district courts in this Circuit have found no inference of discrimination where employers hired or promoted candidates belonging to a plaintiff's protected class.")

In addition to the lack of inference of discrimination, Wal-Mart provided a legitimate, non-discriminatory explanation for seeking an exception for Canales and not Burns or Barham: Restuccia thought she was better qualified. The Court's conclusion on this point is at odds with uncontroverted record evidence.

There is no dispute that the exception process was part of the Project Apple reorganization. Ruling at p. 7 citing Rule 56 Statement at ¶ 57. There is no dispute that Restuccia had to make a business case to support his exception request for Canales. Id. There is no dispute that Restuccia's business case for Canales' exception was reviewed by senior management, as well as Human Resources and Legal Department representatives. Id. And contrary to the Court's conclusion that Restuccia did not compare Canales to Barham, the record shows otherwise:

> ". . . we were told who we were keeping and who we weren't, and Laurie's name
> was one that jumped out at me as a high performer." Restuccia depo trans. at p.

173

"[W]e provided the information that was consistent with my assertion that Laurie

was a high performer." Id.

"Laurie was just somebody I knew how high – what a high quality work she had

done for the company and that her situation wasn't appropriate. I didn't have that

same view and understanding of Mike's performance." Id. at p. 177

" . . . Laurie was more qualified than Mike." Id. at p. 179.

As addressed fully in section B, *supra*, stating that the candidate hired was considered to be

better qualified than the plaintiff has long been recognized as a legitimate, nondiscriminatory

explanation for a hiring decision. Thus, reconsideration on this point is warranted.

2. *The placement of Stan Golembewski does not support Barham's discriminatory termination claim.*

The Court incorrectly concluded that the placement of Stan Golembewski in a

Connecticut MHRM position formerly held by Barham created an inference of discrimination for

purposes of a *prima facie* case and incorrectly concluded that there was sufficient evidence of

pretext to deny summary judgment of Barham's discriminatory termination claim. Again, the

Court ignored undisputed facts and misapplied controlling case law in reaching this conclusion.

First, Golembewski and Barham were not "similarly situated." There is no dispute that

Barham was red-banded during the Project Apple ranking of MAPMs. Ruling at p. 6. There is no

dispute that Golembewski was not even ranked during the Project Apple reorganization because

his Market Grocery Merchandiser position was eliminated along with all other market level

merchandising positions. Ruling at pp. 8, 25 n. 13. There is also no dispute that Stan

Golembewski was the "trailing spouse" of Kim Golembewski, who was promoted as a result of

the Project Apple reorganization. Ruling at p. 8. There has been no suggestion that Barham was

14

anyone's trailing spouse.

     In view of these undisputed facts, Barham and Stan Golembewski are not similarly situated in "all material respects." Graham v. Long Island Rail Road, 230 F.3d 34, 40 (2d Cir. 2000). Some of the criteria used to make this determination are "whether the respective individuals had the same supervisors, were subject to the same performance evaluation and disciplinary standards, and engaged in conduct of comparable seriousness without any differentiating circumstances. McKinney v. Dep't of Transp. for Conn., 3:06-CV-2055 (WWE), 2010 WL 1883427 (D. Conn. May 11, 2010) adhered to on reconsideration, 3:06-CV-2055 (WWE), 2010 WL 3025203 (D. Conn. Aug. 2, 2010) and aff'd sub nom. McKinney v. Dep't of Transp. for Conn, 487 F. App'x 605 (2d Cir. 2012), citing Lizardo v. Denny's, Inc., 270 F.3d 94, 101 (2d Cir.2001).See also Shumway v. United Parcel Service, Inc., 118 F.3d 60, 64 (2d Cir.1997); Paylan v. St. Mary's Hospital Corp., 118 Conn. App. 258, 266, 983 A.2d 56 (2009); and, Craine v. Trinity College, 259 Conn. 625, 638, 791 A.2d 518 (2002). None of these indicia are present here.

     Barham and Golembewski shared only one characteristic: they were displaced by Project Apple. No other facts support a conclusion that Barham and Golembewski were similarly situated in "all material respects." They held different jobs, in different areas of the company, and they were displaced for different reasons. Plaintiff Barham produces no evidence to counter this conclusion. The Court's conclusion that there was a "genuine dispute" on the similarly situated issue was clear error warranting reconsideration.

     Moreover, Wal-Mart provided a legitimate, non-discriminatory explanation for placing Stan Golembewski in Barham's former position: he was Kim Golembewski's "trailing spouse" and Wal-Mart had an established practice of placing individuals in positions facing his

circumstances. Ruling at p. 29. The Court, however, misapplied the controlling legal standard on this point.

Walmart's burden of production to proffer a reason for the adverse action is not onerous. Ortiz v. Prudential Ins. Co., 94 F. Supp. 2d 225, 234 (D. Conn. 2000). To the contrary, the burden is "light," as Defendants need not persuade the court that it was actually motivated by the proffered reasons; instead, Defendants need only proffer evidence that raises a genuine issue of fact as to whether it discriminated against the Plaintiffs. Id.; see also Bickerstaff v. Vassar College, 196 F.3d 435, 446 (2d Cir. 1999), cert. denied, 530 U.S. 1242 (2000) (citation omitted). "Only where an employer's business decision is so implausible as to call into question its genuineness should [a court] conclude that a reasonable trier of fact could find that it is pretextual." Diaz v. Conn. Light & Power Co., 2015 U.S. Dist. LEXIS 15562, at *13-*14.

Defendants' explanation for Plaintiff Barham's termination far surpasses this level of proof. Indeed, the Court recognized that the undisputed facts were that Stan Golembewski was Kim Golembewski's trailing spouse and Wal-Mart sometimes makes arrangements to employ an incumbent's trailing spouse. Ruling at p. 8. This conclusion was supported by an affidavit from Anne Thomas, a Vice President from Wal-Mart's Human Resources, and a February 17, 2010 email about finding Golembewski a position because he was a "trailing spouse" from Monica Mullins, a Vice President from Wal-Mart's Asset Protection, See Thomas affidavit at ¶¶ 9, 10 and defendants Ex. 20. Having proffered its legitimate explanation, the burden of proof shifted back to Plaintiff Barham.

In order to avoid summary judgment, Plaintiff needed to show that (1) Wal-Mart's articulated legitimate, non-discriminatory reasons are false, and (2) more likely than not discrimination was the real reason for the adverse employment action. Weinstock v. Columbia

Univ., 224 F.3d 33, 42, 50 (2d Cir. 2000), cert. denied, 540 U.S. 811 (2003).  This burden "merges with [Plaintiff's] ultimate burden to persuade the trier of fact that he has been the victim of intentional discrimination (i.e., that an illegal discriminatory reason played a motivating role in the adverse employment decision)." Bickerstaff, 196 F.3d at 446Vandel v. Standard Motor Products, Inc., 52 F.Supp.2d 344, 348 (D. Conn.), aff'd, 201 F.3d 433 (2d Cir. 1999), cert. denied, 530 U.S. 1274 (2000). "[A] plaintiff is required to produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action." Timbie v. Eli Lilly Co., 2010 WL 9067050 at *11, quoting Weinstock, 224 F.3d at 42; see also Norton v. Sam's Club, 145 F.3d 114, 120, cert. denied, 525 U.S. 1001 (2d Cir. 1998) (noting that "[t]he thick accretion of cases interpreting the burden-shifting framework should not obscure the simple principle that lies at the core of anti-discrimination cases," viz. that "the plaintiff has the ultimate burden of persuasion."). A plaintiff cannot establish pretext by "offering purely conclusory allegations of discrimination, absent any concrete particulars . . . ." Hoyt, 309 F. Supp. 2d at 307.

Plaintiff Barham failed to bear his burden of persuasion. Plaintiff Barham offered no responsive evidence to contradict Defendants "trailing spouse" explanation. Ruling at p. 8, n. 6. Despite the undisputed facts supporting Wal-Mart's legitimate, nondiscriminatory explanation and Plaintiffs' failure to produce any competent evidence, the Court concluded that there was a material dispute on the "trailing spouse" issue. Ruling at p. 29.

Because the Court misapplied the law, reconsideration is warranted and summary judgment of Barham's discriminatory discharge claim should be granted.

## III.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court reconsider its prior Ruling, vacate those portions denying summary judgment, and grant Defendant's motion for Summary Judgment on all of Plaintiffs' claims.

The Defendants,
WALMART STORES EAST, L.P. and
WAL-MART STORES, INC.

By:     /s/ Craig T. Dickinson
Craig Thomas Dickinson (CT18053)
Alison Day (*pro hac vice*)
Littler Mendelson, P.C
265 Church Street - Suite 300
New Haven, CT 06510
Telephone:  203-974-8700
cdickinson@littler.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 3, 2016, a copy of the foregoing was filed electronically and served by mail on anyone known to be unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

/s/ Craig T. Dickinson
Craig T. Dickinson

18