## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **MICHAEL BARHAM,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | **Civil Action No.: 3:12-cv-01361 (VAB)** |
| **v.** | : | |
| | : | |
| **WAL-MART STORES, INC. and** | : | |
| **WAL-MART STORES EAST, L.P.,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |
| | : | |

### DECLARATION OF PLAINTIFF'S COUNSEL KRISTAN PETERS-HAMLIN IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS

I, Kristan Peters-Hamlin, pursuant to 28 USC sec. 1746, do swear, under the laws of the United States of America that the below is truthful, to the best of my knowledge and belief:

1.   I have been practicing law continuously for more than thirty years.

2.   I am admitted and in good standing in the State of Connecticut, the United States District Court for the District of Connecticut, the United States District Court for the Southern District of New York, the United States District Court for the Eastern District of New York, and the United States Courts of Appeals for the Second Circuit, the Fourth Circuit, and the D.C. Circuit.

3.   My connection to the employment law field began, however, 39 years ago with my studies at Cornell University in 1978. My undergraduate degree was related to the field of labor and employment law, because I graduates from the School of Industrial and Labor Relations.  My honors thesis at Cornell was written on

1

the subject of "Subtle Discrimination Against Women in Professional and Managerial Careers" in 1982.

4. Because of my father's multiple sclerosis, I had to pay for my own undergraduate education, and sometimes worked three jobs at a time while at Cornell. These circumstances made it difficult to go straight to law school as I would have to pay for it 100% myself. Therefore, right out of college, I worked for two years in the employment and labor relations field for the international division of Shell Oil (Pecten International) as a "Labor Relations Analyst," which is a professional position somewhat akin to what today might be called a Human Resources Analyst. I was assigned in this capacity for Pecten/Shell in Houston, Texas and Cameroon, Africa, with another, brief assignment in Equatorial Guinea, as well.

5. I went to law school at University of Texas School of Law, and wrote my law review note for the Texas International Law Journal on "The Impact of Islamic Revivalism on Contract and Riba Law in Saudi Arabia, Egypt and Iran." I was selected to be the Symposium Editor of the Texas International Law Journal. I also worked all six semesters during law school, principally as a "spring" and "autumn" associate for Austin law firms, but also as an apartment manager.

6. I moved to Washington D.C. upon my graduation in 1987, and went to work for Morgan Lewis and Bockius for two years, which I believe was at the time considered one of the preeminent labor and employment firms.

7. I then was recruited to Paul Hastings, and worked as an associate there for two years. I believe Paul Hastings is considered one of the preeminent employment

law firms in the United States.

8. Having received excellent training in the employment law field for four years as an associate at two preeminent firms, I then joined the Washington DC United States Attorney's Office, in order to learn how to try cases. I was appointed initially to my position by Attorney General Dick Thornburgh, but I continued to serve under Attorney Generals William Barr and Janet Reno. I served in both the criminal and civil divisions of the United States Attorney's Office ("USAO") under three different U.S. Attorneys.

9. The USAO in Washington DC is often called the "busiest USAO in the nation." AUSAs in that office have an opportunity to get significant and early trial experience in that position.

10. The Civil Division of the USAO in Washington DC is somewhat unique in that so many of the federal departments and agencies are located in D.C., so when those departments and agencies are sued for discrimination by their federal employees, it would be the AUSAs in the Washington DC USAO Civil Division who would defend such cases. This provides Civil Division AUSAs in D.C. more opportunity, comparable to AUSAs in other USAOs, to try employment cases. Because of my background in employment law, I was given an inordinate amount of those cases. Because the federal government tended not to settle as much as the private sector back in those days, I believed I received significant and early training litigating employment cases in the '90s. I was given the responsibility to handle such employment discrimination cases principally on my own, and therefore acquired significant training in litigating such cases,

much earlier than attorneys of a comparable vintage in private practice.

11. After slightly less than six years of service, I went back to private practice, and was hired to head the employment law department of the Baltimore office of McGuire Woods in December 1996.  However, my husband took a position in July 1998 in New York City and moved the family to Connecticut, which is when I moved to Connecticut and began practicing law here.

12. After developing a client base nationally, and in the Connecticut and New York areas, I was able to become an equity partner at major international law firms, such as Pillsbury Winthrop, (where I worked as the head of the employment law department in Pillsbury Winthrop's Stamford Connecticut office) and Fulbright & Jaworski, in their New York office's employment law department.

13. In both 2006 and 2007, I was awarded "New York Super Lawyer" for Employment Law.

14. In July 2007, I started my own law firm, headquartered initially in Stamford CT, and then in Norwalk, CT.  I have been practicing for the last ten years as a solo practitioner at my own firm.

15. I was being billed at north of $700/hour when I was at a large law firm.  I lowered the rate by more than $100 when I started my own firm in 2007.

16. I do a significant amount of "advice and counsel" work at a straight hourly rate, and also negotiate severance agreements, do employment investigations, negotiate non-compete agreements, do employment training, trial and other employment law work on a straight hourly basis. I would estimate that more than two-thirds of my work is at an hourly rate, and less than a third is at a

contingency rate.

17. During the last ten years, I have never even once billed at less than $500/hour. On rare and special occasions, I have billed at $500. On several occasions, I have billed at $550/hour.  During the last five years, my usual rate has varied between $600/hr and $650/hr.  My current rate is $650/hour.  The three plaintiffs in this case all signed in 2010 engagement letters to pay my rate of $650/hour, in the event we terminated the relationship.  But if the relationship is not terminated, then the agreement is a contingency.

18. I have reviewed my firm's billing records for the time spent representing the plaintiffs in this case since February 2010.

19. I recorded all my time directly on a Daytimer Calendar each year.  Thus, the time entries were entered on such a calendar by hand, contemporaneously, alongside other recorded hours for other work, and appointments.  I have retained each of my Daytimer Calendars since 2007 and have reviewed the entries of my time recorded in this case for the years 2010-2017.  To ensure accuracy, I have also checked the recordings against the docket sheet in this case, 12-cv-01361 and the consolidated case of 14-cv-1808. I have also checked email correspondence pertaining to this case, which I have retained in this case back to 2010.

20. I attach hereto as exhibits 1-8, the summaries of my time for each of the calendar years 2010-2017. I have   concluded that the firm reasonably expended 2,240.20 hours on this case during those eight calendar years. I have written off 340.9 hours of time in 2017, because I do not believe that work can be claimed

to have contributed in any way to the success of the *Barham* case.

21. In the attached affidavit, Joseph Garrison attested that, a year and nine months

ago, the going rate for an attorney with comparable years of experience (Greg

Adler) was $500/hour.   Ex. 9.  Rates have increased in the last two years, and

Fairfield Country rates are, I believe, higher than Hartford rates.   Nevertheless,

2,240.20 hours at that $500 rate would produce $1,120,100  in attorneys fees.  At

the parties' contractual rate, my normal rate, of $650/ hour, 2,240.20 hours  would

come to $1456,130[1] in attorneys' fees.

22. I have also reviewed expenses my office has incurred in representing the plaintiffs

in this case, and have written off some expenses. After certain expenses have been

written off, these expenses total $36,500.77 for deposition transcripts, travel

costs, hotels, photocopying, witness fees, court filing costs, summons, trial

binders and books for the court and opposing counsel as required by the Court,

Pacer and Westlaw charges, and Fedex charges, for the period through

September 26, 2017.

23. Because most of the attorney's fees under my agreement with my client are

awarded to him, I am duty-bound to advocate that he be awarded the full

contractual amount of $1456,130 in attorney's fees.  However, if it pleases the

Court, I would be willing to attempt to come to a reasonable alternative

arrangement by either stipulation with opposing counsel, or by mediation of the

---

[1] The Court has asked the plaintiff to file a revised prejudgment interest calculation and briefing by October 23, 2017.  This amount does not include any work that would occur to submit that briefing and calculation This request and calculation of fees will be supplemented by that amount related to that briefing, as well as for any amount expended in reply to any objection to this application for attorney's fees.

amount with Joseph Garrison, in order to spare the Court from such tedious

accounting matters.  The full amount of $36,500.77 in costs should be awarded,

Respectfully submitted,
Plaintiff's Counsel
By:  /s/ *Kristan Peters-Hamlin*
Kristan Peters-Hamlin
Peters Hamlin LLC
37 North Ave., suite 201
Norwalk, CT, 06851
(203) 504-2050

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of September 2017, a copy of the foregoing was sent

electronically to Counsel for the defense.

/s/ *Kristan Peters-Hamlin*