MICHAEL BARHAM
      Plaintiff,

      v.

WAL-MART STORES, INC. and
WAL-MART STORES EAST, L.P.,
      Defendants.

No. 3:12-cv-01361 (VAB)

## RULING AND ORDER ON ATTORNEY'S FEES AND COSTS

Currently pending before the Court is Michael Barham's ("Plaintiff") Motion for

Attorney's Fees and Costs. ECF No 631.

For the reasons set forth below, the Court will **GRANT** the motion for attorney's fees

and costs and award Plaintiff **$973,083.50** in attorney's fees and **$30,960.24** in costs.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

The Court assumes the parties' familiarity with the facts and procedural posture of this

long-pending case.

This case arises out of employment discrimination claims brought by Michael Barham,

Kim Hannah, and Tom Irving[1] against Wal-Mart Stores, Inc., and Wal-Mart Stores East, L.P.

---

[1] The Court dismissed all of Mr. Irving's claims at the summary judgment stage. *See* Summ. J. Ruling, ECF No. 255. Following this decision, Ms. Peters-Hamlin filed a premature appeal to the Second Circuit following the Court's partial grant of summary judgment, despite the absence of any final judgment in this case at the time. *See* Supp. Order to Show Cause, ECF No. 508. In addition to filing a motion to dismiss, Defendants filed a motion for sanctions in the Second Circuit, and after the parties briefed their respective arguments, the Second Circuit dismissed the appeal and specified that this Court could consider Defendants' motion for sanctions in connection with the outstanding sanctions issues already before the Court. *See* Mandate Dismissing Appeal, ECF No. 357.

(together "Walmart" or "Defendants"). Two separate jury trials were held as to Mr. Barham's claims and Ms. Hannah's claims. *See* Minute Entries, ECF Nos. 427, 552. At the conclusion of the jury trial as to Mr. Barham's retaliation and discrimination claims under Title VII, the jury entered a verdict of $550,000 in compensatory damages and $5,000,000 in punitive damages against Walmart for retaliation in violation of Title VII. Jury Verdict, ECF No. 430. Following motions for remittitur, the Court subsequently reduced those awards to $125,000 and $175,000 respectively. *See* Memorandum and Ruling, ECF No. 618.

As for Ms. Hannah, the Court granted Walmart's motion for judgment as a matter of law and dismissed Ms. Hannah's claim under Rule 50 of the Federal Rules of Civil Procedure, after the presentation of her case. Minute Entry, ECF No. 552.

Mr. Barham now moves for attorney's fees and costs under 42 U.S.C. §§ 1988 and 2000e-5(k). Pl. Mot. for Attorney's Fees, ECF No. 631. Kristan Peters-Hamlin, Mr. Barham's attorney, seeks fees for a total of 2,300.2 hours of work between 2010 and 2017. *See* Revised Dec. of Kristan Peters-Hamlin ("Peters-Hamlin Decl.") ¶¶ 18-20, ECF No. 634-2.[2] She also seeks an hourly rate of $650 per hour. Pl. Mem. of Law, ECF No. 631-1 at 10. Ms. Peters-Hamlin thus seeks a total of $1,434,940 in attorney's fees. Peters-Hamlin Decl. ¶ 21. She submitted documentation of her hours and declarations supporting her proposed hourly rate. Peters-Hamlin Decl. ¶¶ 18-20, ECF No. 632. Additionally, she submitted supporting documentation for a request of $36,500.77 in costs. *Id.* at ¶ 22.

Walmart opposes the application, arguing that "Plaintiff's fee application must be substantially reduced, if not rejected outright." Defs. Opp. at 1, ECF No. 642. It argues that

---

[2] Plaintiff submitted a motion to amend the original filing, revising the hours and costs claimed. Pl. Mot. for Leave to File, ECF No. 634. The figures referred to in this ruling reflect the revised amount.

Plaintiff's submission is highly inflated, represents fees accrued while working on claims that were not ultimately successful, and is out of line with prevailing market rates.

## II.    APPLICABLE LEGAL STANDARD

In Title VII actions, the "court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee (including expert fees) as part of the costs . . . ." 42 U.S.C. § 2000e-5(k). "The Supreme Court has held that a 'prevailing party' is one who has favorably effected a 'material alteration of the legal relationship of the parties' by court order." *Garcia v. Yonkers Sch. Dist.*, 561 F.3d 97, 102 (2d Cir. 2009) (*quoting Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001)); *see also Farrar v. Hobby*, 506 U.S. 103, 111 (1992) ("Therefore, to qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim. The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought.").

The district court may reach a presumptively reasonable fee by calculating the lodestar figure: the product of the reasonable number of hours spent and the "prevailing market rates in the relevant community." *Perdue v. Kenny A ex rel. Winn*, 559 U.S. 542, 551 (2010). The prevailing market rates should take into account the rate for attorneys of "comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 (1984).

There is a strong presumption that the lodestar figure is a reasonable fee, although a district court has discretion to enhance or lower the lodestar based on several different factors. *See Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999); *see also Perdue*, 559 U.S. at 551 (2010) (listing factors courts may consider in deciding whether to enhance fee amounts); *Genn v. New Haven Bd. of Educ.*, No. 3:12-CV-00704(CSH), 2017 WL 3022321, at \*2 (D.

Conn. July 17, 2017) (listing several factors that could merit reduction in fees, including vague, redundant, excessive or unnecessary time entries).

The fee applicant bears the burden of demonstrating that he or she is entitled to a fee award, and that the award is reasonable. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). A party seeking a departure from the lodestar amount bears the burden of substantiating that departure. *See, e.g.*, *U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 413 (2d Cir. 1989) ("We note that a party advocating the reduction of the lodestar amount bears the burden of establishing that a reduction is justified.")

## III.    DISCUSSION

Because Mr. Barham is a prevailing party, having obtained a substantial jury verdict in his favor, he is entitled to receive attorney's fees and costs. *See, e.g.*, *Brady v. Wal-Mart Stores, Inc.*, 455 F. Supp. 2d 157, 202-203 (E.D.N.Y. 2006) (qualifying plaintiff as prevailing party and awarding fees where plaintiff had won a $7.5 million jury verdict that was ultimately reduced on order of remittitur).

The Court then turns to the issue of the appropriate lodestar for this case. Determining the lodestar is a three step process: the Court first must determine a reasonable hourly rate, then determine a reasonable number of hours required to prevail on the claim, and arrive at a total award by multiplying both rate and hour together. *See Perdue,* 559 U.S. at 551 (2010). For the reasons described below, the Court determines the reasonable rate for Mr. Barham's counsel is $500 per hour, and the reasonable number of hours is 1,946.167. Therefore, the fee award will total $973,083.50.

## A.       Reasonable Hourly Rate

The first question in determining the lodestar is to determine the "prevailing market rates in the relevant community." *Perdue*, 559 U.S. at 551 (*quoting Blum v. Stenson*, 465 U.S. 886, 895 (1984)). This requirement ensures that a fee award "*roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue*, 550 U.S. at 551. The fee applicant bears the burden of producing "satisfactory evidence—in addition to the attorney's own affidavits— that the requested rates are in line with" the prevailing market rate for attorneys of "comparable skill, experience, and reputation." *Blum*, 465 U.S. at 895 & n.11. Additionally, the court may look to evidence of what a client is willing to pay and sho0uld use current rates rather than historic ones. *See Parris v. Pappas*, 884 F. Supp. 2d 262, 266 (D. Conn. 2012).

Plaintiff proposes an hourly rate of $650 or, alternatively, an hourly rate of no less than $500. Pl. Mem. at 10. Ms. Peters-Hamlin, a solo practitioner working under a contingency fee agreement, represented Mr. Barham. According to her declaration, she has thirty years of legal experience, with many of those years involved in employment law. Peters-Hamlin Decl. ¶¶ 6-16. She also represents that her current rate is $650 an hour, a rate that Plaintiff in this case agreed to in an "engagement letter[] . . . in the event we terminated the relationship." *Id.*

In further support of the $650 hourly rate, she submitted a declaration from the Treasurer of Miyoshi America, Inc., a client who has retained Ms. Peters-Hamlin as outside counsel unrelated to this litigation. Decl. of Louise Pockoski, ECF No. 648-1. Ms. Pockoski states that Ms. Peters-Hamlin's usual rate is $600 per hour, and she has never charged Miyoshi with a rate below $600 per hour. *Id.* at ¶ 8. Finally, she submitted an affidavit from Attorney Joseph Garrison, originally submitted to this Court in the unrelated matter of *Vera v. Alstom Power, Inc.*,

3:12-cv-00382 (VAB). In it, Mr. Garrison endorses a rate of $500 for Mr. Gregg Adler as a "reasonable market rate[]." *Id.* ¶¶ 9, 11.

Walmart argues that the Court must "rebuff[]" what it labels a "completely unreasonably" fee proposal. Defs. Opp. at 11. But, Walmart's filings do not contain any affidavits from a lawyer practicing in the District of Connecticut, or elsewhere for that matter, in support of its suggested $250 hourly rate or cite to any relevant precedent on this issue. In the absence of such evidence or relevant precedent, the Court does not find $250 would be a reasonable hourly rate for this case or Ms. Peters-Hamlin.

Having considered the arguments raised by both parties, the Court will adopt a $500 hourly rate. Mr. Barham has submitted an affidavit from Attorney Garrison for a $500 hourly rate, but that affidavit speaks to the qualities of another attorney, not Ms. Peters-Hamlin. Garrison Decl. ¶¶ 9, 11. The declaration nevertheless provides a general going market rate, as well as meets *Blum*'s requirement that the market rate proposed be supported by evidence, in addition to an affidavit from the fee applicant's attorney. *Id.* Indeed, the $500 hourly rate has been awarded by courts in this District as an appropriate rate for lead counsel with decades of experience. *See, e.g.*, *Goff v. Chivers*, No. 3:15-cv-00722(SALM), 2017 WL 2896022, at *2 (D. Conn. July 7, 2017) (adopting $500 rate for attorney with extensive experience in field); *Rinaldi v. Laird*, No. 3:14-cv-00091 (JAM), 2017 WL 2616921, at *2 (D. Conn. June 16, 2017) (same); *CSL Silicones, Inc. v. Midsun Grp. Inc.*, No. 3:14-cv-01897 (CSH), 2017 WL 1399630, at *4 (D. Conn. Apr. 18, 2017) (awarding $500 per hour for lead attorney in intellectual property case).

While the affidavit does not address Ms. Peters-Hamlin specifically, the Court nevertheless recognizes that Ms. Peters-Hamlin's level of skill, experience and relative success, as well as her own billing, is sufficient to warrant an hourly rate of $500.

## B.     Reasonably Expended Hours

The second requirement of the lodestar is to determine "the number of hours." *Perdue,*

559 U.S. at 546. As a general matter, these hours should be determined using contemporaneous

records that specify the attorney, the hours spent, and "the nature of the work done." *Genn v.*

*New Haven Bd. of Educ.*, No. 3:12-cv-00704(CSH), 2017 WL 3022321, at *3 (D. Conn. July 17,

2017) (*quoting New York State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1148 (2d

Cir. 1983).

In this case, according to Ms. Peters-Hamlin's declaration, Mr. Barham seeks

compensation for a total of 2300.2 attorney hours, based on documentation contemporaneously

maintained.[3] According to Ms. Peters-Hamlin, she reviewed her records and removed any entries

that related to the other two plaintiffs in this case, Mr. Irving and Ms. Hannah. She represents

that the fee amount is reasonable given the complexity of the case, particularly given the size and

scope of Walmart's corporate structure.

In response, Walmart has not chosen to examine all of the time entries and draw the

Court's attention to specific time entries it deemed unreasonable or vague. Walmart decided that

"[i]dentifying specific time entries to remove is not an appropriate approach in this matter."

Defs. Opp. at 18. Instead, Walmart chose to argue for a "broad brush reduction of Plaintiff's fee

application." *Id.* Arguing for a number of categorical reductions, Walmart suggests that the Court

award only $83,007.50.[4]  *Id.* at 23. Walmart argues that the fees should be reduced fifty percent

---

[3] This number was reached by totaling the time entries provided in Plaintiff's filings. It differs
slightly from the Plaintiff's calculation, which appear to have several errors calculating yearly
totals. This number also does not include hours that clearly were attributable to other plaintiffs.
[4] Interestingly, Walmart argues for a severely limited fee award to "account for the severely
limited amount of success achieved," despite the initial jury award of $5,550,000. Defs. Opp. at
8, 25. This argument is based on the totality of claims brought by all three plaintiffs which, as

for the "nature and quality of Plaintiff's counsel's time entries," and the hours should further be

reduced an additional seventy percent "in view of the undeniably limited success achieved in this

matter." *Id.* The Court declines Walmart's invitation.

The Court has discretion, however, to reduce the hours billed in situations where the time

entries are vague, overly broad, or represent limited success on the part of the prevailing party.

*See U.S. Football League,* 887 F.2d at 414 (noting district court's "attempt to identify specific

hours that should be eliminated" or to "simply reduce the award to account for limited success."

(*quoting Hensley v. Eckerhart*, 461 U.S. 424, 436-37 (1983))); *Kirsch v. Fleet St., Ltd*., 148 F.3d

149, 172-73 (2d Cir. 1998) (district court has discretion to "deduct a reasonable percentage of the

number of hours claimed as a practical means of trimming fat from a fee application," for

"excessive, redundant, or otherwise unnecessary" entries, or for "vagueness, inconsistencies, and

other deficiencies in the billing records"); *see also Green v. City of New York*, 403 F. App'x 626,

630 (2d Cir. 2010) (affirming district court's review of block billing that resulted in a "15%

across-the-board reduction" for unreasonableness and vagueness); *Adorno v. Port Auth. of New*

*York & New Jersey*, 685 F. Supp. 2d 507, 515 (S.D.N.Y. 2010) (finding block-billed time

records provided sufficient detail to award fees but noting that "[w]hile 'block-billing' is

disfavored and may lack the specificity required for an award of attorneys' fees, it is not

prohibited as long as the Court can determine the reasonableness of the work performed"

(internal citations and quotation marks omitted)).

After a careful review of the submissions here, a reduction of the amount of hours sought

is necessary in the following ways. First, the Court will not award fees for any entry that is

---

noted below, the Court takes into account by not crediting hours unrelated to work on Mr.
Barham's behalf.

overly broad or vague, or refers exclusively to work for one of the other two plaintiffs in the case, who did not prevail and therefore are not entitled to fees.[5] Second, the Court will award partial fees for entries where work for Mr. Barham and the two other plaintiffs overlapped.[6] The Court will divide these entries by one-third to reflect the proportion of work related to Mr. Barham's case. Finally, the Court will not award fees for what it has determined to be a frivolous appeal to the Second Circuit.[7] The Court will also not award fees for responses to this Court's two orders to show cause.

The resulting total equals 1946.167 hours. This represents slightly more than a 15% deduction in total hours claimed by Plaintiff.

The Court sees no further need to reduce or adjust the lodestar, as it has already taken into account factors that would account for a reduction in its calculation. Therefore, the final award will equal 1,946.167 hours at a rate of $500 per hour. In sum, the total attorneys' fees awarded equals $973,083.50.

---

[5] The entries for the following days are therefore excluded: August 3, and 28, 2010; October 9, 2010; January 12, 2011; July 15, 2013; January 23, 2014; April 18 and 19, 2014; November 10, 2014; December 3, 2014; March 20, 2015; April 10, 2015; February 12, 2016; April 12, 2016; December 11, 12, 17, and 28, 2016.

[6] The entries for the following days are therefore excluded: March 18, 2010; April 13, 2010; August 6, 2010; January 7, 8, 9, and 10, 2011; August 8 and 9, 2011; November 2, 2012; February 4, 2013; April 1 and 3, 2013; April 26, 27, and 30, 2013; May 1, 2, 3, and 7, 2013; June 19 and 20, 2013; July 1, 2013; September 3, 2013; October 21, 22, 24, 25, and 31, 2013; November 1, 12, 13, 23, 24, 25, and 26, 2013; December 4, 12, 13, and 14, 2013; January 24, 2014; February 6, 8, 10, 11, 12, 13, 14, and 28, 2014; April 29, 2014; May 28, 29 and 30, 2014; June 2, 2014; August 15 and 18, 2014; September 4, 2014; October 1 and 31, 2014; November 1 and 3, 2014; January 12, 13, 14 and 15, 2015; February 18 and 20, 2015; March 11, 2015; June 29, 2015; August 17, 2015; November 10, 2015; February 29, 2016; June 24, 28 and 29, 2016.

[7] This appeal has already been the subject of an order to show cause. ECF No. 580. This Court will also issue a separate sanctions ruling addressing these concerns, but the following entries are also excluded: July 13 and 14, 2016; August 4, 2016; September 7, 2016; October 12, 14, 16, 17, 21, 24, and 28, 2016; December 7, 2016.

**D.     Costs**

The Court now turns to the issue of costs. Plaintiff claims a total of $37,360.78 in costs. *See* Pl. Bill of Costs at 5, ECF No. 635. Defendants raise similar objections to the costs, and claim that it should be substantially reduced. Defs. Opp. at 24.

As one district court noted, "Title VII's provision on costs has been construed as a supplemental power conferred upon courts 'to award those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client in the course of providing legal services.'" *Noble v. Herrington*, 732 F. Supp. 114, 118 (D.D.C. 1989) (quoting *Laffey v. Northwest Airlines*, 572 F. Supp. 354, 385 (D.D.C.1983)); *see also McPherson v. Sch. Dist. No. 186, Springfield, Ill.*, 465 F. Supp. 749, 763 (S.D. Ill. 1978) (awarding travel costs to plaintiffs' attorneys). The decision to award costs "rests within the sound discretion of the district court." *LoSacco v. City of Middletown*, 71 F.3d 88, 92 (2d Cir. 1995).

The Court will review and reduce the costs claimed on similar grounds to those articulated above related to fees. *See, e.g.*, *Ferguson v. Fairfield Caterers, Inc.*, No. 3:11-CV-01558 (JAM), 2015 WL 2406156, at *10 (D. Conn. May 20, 2015) (reducing costs on similar grounds, and to a similar extent, as attorneys' fees).

The following costs are subtracted from the total:

- $1034.25 for costs associated with the deposition of Kim Hannah.

- $1,468.90 for costs associated with the deposition of Tom Irving, Jr.

- $1,022.39 for costs associated with the deposition of Anthony Durden.

- $875.00 for flight and hotel in Birmingham, Alabama, related to the depositions of Anthony Durden and Tom Irving.

- $2000 from Dr. Dolde's initial charge for work done for Plaintiffs Irving and Hannah.

The Court in total will subtract $6400.54 from the costs sought by Mr. Barham. Mr. Barham therefore is awarded $30,960.24 in costs.

## CONCLUSION

Plaintiff's Motion for Attorney's Fees and Costs is **GRANTED** and the Court awards Plaintiff **$973,083.50** in attorney's fees and **$30,960.24** in costs.

SO ORDERED this 18th day of December, 2017, in Bridgeport, Connecticut.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE